HAWTHORNE, Justice.
 

 This is an appeal by Pauline Blackwell Lands from a judgment rejecting her claim to $5000.00, the proceeds of an employees’ group insurance policy on the life of Thomas Lands, and recognizing Johnny Lands, James O’Conner, and Willie O’Conner, brother and half-brothers of the deceased Thomas Lands, as being entitled to this money.
 

 There were several claimants to the proceeds of this policy, and the company which had issued it, Equitable Life Assurance Society of the United States, availing itself of the provisions of R.S. 13:4811, deposited the proceeds of the policy in the court for the benefit of the parties entitled to the funds. The judgment of the court relieved the insurance company from all liability for the payment of the proceeds of the policy to the parties and from all liability to all persons under the policy, and ordered all costs of the proceedings taxed against the funds deposited. Of the claimants whose demands were rejected only Pauline Blackwell Lands has appealed.
 

 
 *785
 
 Thomas’ Lands did not name a specific beneficiary in the policy of insurance, but the policy provided:
 

 “Any part of the insurance for which there is no beneficiary designated by the employee or surviving at the death of the employee will be payable in a single sum to the first surviving class of the following classes of successive preference beneficiaries : The employee’s (a) widow or widower; (b) surviving children; (c) surviving parents; (d) surviving brothers and sisters; (e) executors or administrators.”
 

 Thomas Lands and Pauline Blackwell were married in the Parish of East Baton Rouge on March 30, 1956, as evidenced by marriage license and the returns on it. Appellant, relying on this marriage, claims to be the widow of Lands and as such entitled to the proceeds of the policy. Appellees, brothers of the deceased, contend that this marriage was a nullity because appellant was legally married to Willie Blackwell when she purportedy married Lands, and that they are the first-ranking beneficiaries under the quoted provision of the policy.
 

 There is not much dispute as to the facts in this case. Appellant was married to Willie Blackwell in Oak Grove, Louisiana,' in October, 1940. After living in Oak Grove some three or four years, they moved to Jackson, Mississippi. There they lived together for about a year and then separated. Appellant remained in Jackson for some eight months and then went to Delhi, Louisiana, leaving her husband in Jackson. She remained in Delhi for seven or eight months. During 1945 or 1946 she moved to Baton Rouge, where she has lived ever since. In March, 1956, she married Thomas Lands. Lands died on July 8, 1956, about four months after this marriage.
 

 Thomas Lands, a retired employee of Esso Standard Oil Company, was married to Bertha Tolbert, who died a few months after his retirement. A short time later he married the appellant. At the time of this marriage Lands was about 61 and Pauline Blackwell was 42. The insurance policy here involved was issued on application of Lands in January, 1941, during the time he was an employee of Esso Standard Oil Company and during his marriage to Bertha Tolbert.
 

 Under the provisions of Article 93 of our Civil Code, “Persons legally married are, until a dissolution of marriage, incapable of contracting another, under the penalties established by the laws of this State”. One of the penalties is the absolute nullity of the marriage between persons when one or both are not able to contract, and this nullity must be applied in all cases which fall within the scope of the prohibition. Under Article 136 of the Code, the bonds of matrimony are dissolved by the death of the husband or wife, by divorce, or when
 
 *787
 
 ever the marriage is declared null and void for one of the causes enumerated in the Code.
 

 In the instant case it has been shown that Pauline Blackwell Lands was married to Willie Blackwell, and that after that marriage she married Lands; and there is no evidence in this record which discloses whether Blackwell was living or dead or whether he ever obtained a divorce from the appellant. Pauline Blackwell Lands herself testified that Blackwell was alive when she left him in Jackson, Mississippi. Her daughter by a previous marriage remained with Blackwell in Jackson for some time after appellant left. Appellant testified that she did not know whether Blackwell was living or dead, that she never obtained a divorce from him and did not know whether he ever got a divorce from her, and that she had never seen or heard from Blackwell after she left him in Jackson.
 

 Under the law of this state quoted above, if Blackwell was living and neither of the parties to the marriage had obtained a divorce at the time appellant married Lands, her marriage to Lands would be an absolute nullity.
 

 According to 35 Am.Jur., Marriage, Section 195, pp. 306-307, “There is a difference of opinion as to whether and when the law is to presume the validity of a subsequent as against a previous marriage of the same person. The majority view is that a second or subsequent marriage of a person is presumed to be valid, and such presumption is stronger than, and overcomes or rebuts, the presumption of the continuance of the previous marriage, and the burden of proving the continuance of the previous marriage and the invalidity of the second marriage is upon the party attacking the validity of the subsequent marriage. In other words, the presumption of the continuance of a previous marriage in itself is not equal in probative force to the presumption of the validity of the subsequent marriage. It is presumed, in favor of the validity of the subsequent marriage, that the previous marriage has been dissolved by death, divorce, or annulment.” See also Annotation, 14 A.L.R.2d 7, particularly Section 2, pp. 10-11.
 

 35 Am.Jur., Section 197, pp. 308-309, in discussing to whom and when the presumption is available, has this to say:
 

 “The question of who may invoke the presumptions in favor of the validity of a second marriage has not been much discussed by the courts. While they have explicitly recognized the propriety of permitting it to be invoked in favor of the innocent party to such a marriage, or of the offspring, instances in which the alleged guilty party has been permitted to avail himself or herself of it are by no means infrequent. But one reason given for shifting the presumption of validity to the
 
 *789
 
 second marriage is that it is more equitable to require the party attacking it to prove its invalidity than to put the innocent party thereto to proof of the capacity of the other contracting party, and such reason implies the restriction of the benefit of the presumption to one who is an innocent party to a subsequent marriage. Thus, it has been stated that the presumption applies with peculiar force in favor of one who is unable to prove affirmatively that the person whom he or she married in good faith was divorced from a former spouse. Indeed, it has been specifically ruled that if, at the time a subsequent marriage is solemnized, the party under disability because of a pre-existing marriage knows that such disability exists, the presumption of innocence cannot be indulged in his or her favor. The view has been taken that the presumption does not apply in favor of one who deserts a spouse and again marries, and it has been held that a husband who did not know his wife to be living within some years immediately preceding the second marriage will not be presumed to have believed her dead, where he had left her and gone to another state, and there was no repute of her death; but rather, he will be presumed not to have believed her to be dead.”
 

 We are in full accord with the majority view that a presumption exists as to the validity of a second marriage and that the burden of proof to show that it is a nullity is on the party attacking it.
 
 [1]
 
 W.e do not think, however, that this presumption should be available to one who has deserted or abandoned a spouse of a prior marriage in another state and subsequently in this state remarries in bad faith and without reason to believe that the first marriage has been dissolved by death, divorce, or annulment. Whether a party in such a case is innocent and in good faith must depend upon the circumstances and facts of each case, and where innocence or good faith is once established, the burden of proof to show that the first marriage is still in existence is on the party attacking the second marriage. However, in such a case if bad faith is shown, the burden of proof to show that the first marriage was dissolved by death, divorce, or annulment prior to the second marriage is on the party whose marriage is under attack.
 

 
 *791
 
 We are mindful that as a general rule of law when a man and a woman marry and live together as husband and wife, they are presumed to have contracted the marriage in good faith. As we view the matter, however, for a party to a second marriage to be able to avail himself of the presumption of validity of such a marriage where it is shown that he has deserted his first spouse in another state, he must show that he entered into the second marriage in good faith.
 

 In the condition of the record as made up in the instant case, we are unable to determine with any degree of certainty whether Pauline Blackwell Lands was in good faith at the time she contracted her marriage with Lands, and we have concluded to remand the case in the interest of justice. She left Blackwell in Jackson, Mississippi, but we do not think that we should declare her in bad faith just because she admitted that she did not know as a matter of fact whether Blackwell was living or dead and that she had not obtained a divorce from him. It must be remembered that about 11 years had elapsed between her leaving Blackwell and her marriage to Lands, and during this time she never saw or heard from Blackwell. If she was in good faith and had reasonable grounds to believe that her first marriage had been dissolved, the presumption of the validity of her marriage to Lands would be available and she could rely on it, and the burden of proof would then be on appellees, the brothers, to show that her marriage to Blackwell was still in existence. In the event they should fail to do so, the validity of her marriage to Lands could be presumed and she would be entitled to the proceeds of the policy of insurance as his widow. On the other hand, if she should be unable to show that she contracted her marriage with Lands in good faith, the burden would then be on her to show to the satisfaction of the court that her marriage to Blackwell had been dissolved by death, divorce, or annulment.
 

 For the reasons assigned the judgment appealed from, insofar as it recognized appellees, Johnny Lands, James O’Conner, and Willie O’Conner, to be entitled to the proceeds of the insurance policy, is annulled, reversed, and set aside, and the case is remanded to the district court for further proceedings consistent with the views here expressed. Appellees are to pay all costs of this appeal.
 

 FOURNET, C. J., concurs in the decree.
 

 [1]
 

 . However, see McCaffrey v. Benson, 38 La.Ann. 198, where this court held, under the facts of that case, that the burden of proof was on the party to a second marriage to establish the legality of that marriage. That case, however, was decided before the repeal of Article 80 of the Civil Code which permitted a husband or wife to contract another marriage when there had been no news for 10 years of an absentee spouse of a prior marriage; and there the absentee spouse had been seen alive much less than 10 years before the second marriage. Furthermore, the court there did not even mention, discuss, or consider the rule as to the presumption of the legality of a second marriage.