131 So.2d 319 (1961)
Succession of John PRIMUS.
Gertrude Gayton et al., Plaintiffs-Appellants,
Hattie Primus, Defendant-Appellee.
No. 5205.
Court of Appeal of Louisiana, First Circuit.
May 22, 1961.
Rehearing Denied June 30, 1961.
*320 C. Paul Phelps, Ponchatoula, Matthew F. Belin, New Orleans, for appellants.
Leonard E. Yokum, Hammond, for appellee.
Before ELLIS, LOTTINGER, JONES, HERGET and LANDRY, JJ.
JONES, Judge.
Plaintiffs, alleging themselves to be the brothers and sisters of John Primus who died in the year 1954, brought this suit in the District Court to be recognized as his sole and only heirs and placed in possession of the property of which he died possessed. The property consists of an acre and a half of land together with a small house thereon, the whole estate amounting to the sum of some $9,000 as shown by the inventory. They further allege that the defendant, Hattie Primus, entered into an alleged marriage with their brother, John, in the year 1928 but at the time of doing so there was an impediment to said marriage due to the fact that Hattie at that time was married to Hubert Fairley, and that he did not die until the year 1946. The defendant filed answer wherein she admitted she married Fairley in the year 1901, that he left her in 1904 and that 24 years thereafter, or in 1928, thinking Fairley was dead or divorced, she entered into the marriage with Primus, honestly believing at the time this marriage was confected that it was a valid one. From a judgment of the District Court recognizing Hattie Primus as the widow of John Primus and placing her in possession of one-half of the community property of which John Primus died possessed the plaintiffs have appealed.
In the year 1901 the defendant in this case, who was at that time 13 years of age, contracted a marriage with one Hubert Fairley in the Parish of Tangipahoa, State of Louisiana. The record reflects that Fairley was a "drifter" from the State of Alabama and he lived with the defendant for a period of three years, during which time a child was born. In 1904, according to the testimony of the defendant, "he left me, he told me he was gone and he was gonna get his divorce and I needn't worry about him no more." Defendant further testified that she did not see or hear of Fairley for 24 years and honestly believed him to either be dead or to have divorced her. She entered into the contract of marriage in 1928 with John Primus. Defendant is a Negro woman who can neither read nor write and at the time the marriage ceremony was performed for her and Primus she was 40 years of age. In the year 1938 Primus purchased one and one-half acres of land for a consideration of $75 and on this land a small house was constructed in which he and Hattie lived until his death in 1954; thus they lived together as man and wife for a period of 26 years. Two of John Primus' brothers and sisters, who are two of the plaintiffs in this suit, were reared by John and Hattie on this property. John worked as a railroad man and Hattie raised and sold strawberries through the years on the small acreage which they owned. Both were regular church attendants and were recognized throughout the community as husband and wife.
LSA-Civil Code, Article 117, provides as follows:
"The marriage which has been declared null, produces nevertheless its civil effects as it relates to the parties and their children, if it has been contracted in good faith."
The good faith referred to in the abovequoted article means simply the honest and reasonable belief that the marriage at the *321 time of its confection was a valid one. Smith v. Smith, 43 La.Ann. 1140, 10 So. 248; Succession of Marinoni, 183 La. 776, 164 So. 797; Succession of Chavis, 211 La. 313, 29 So.2d 860; Funderburk v. Funderburk, 214 La. 717, 38 So.2d 502. If there is any doubt as to the good faith of the parties to a second marriage, it is to be resolved in favor of good faith. Jones v. Squire, 137 La. 883, 69 So. 733. What constitutes good faith is not an absolute quality but is relative and depends ultimately upon the facts and circumstances in each individual case.
The plaintiffs, in order to establish bad faith on the part of defendant Hattie Primus, have shown that she married Hubert Fairley in the year 1901 and it is their further contention that they have proven that Fairley did not die until the year 1946 and that he was, of course, living at the time that defendant Hattie Primus entered into the contract of marriage with their brother, John Primus.
We note from a supplemental brief filed by counsel for plaintiffs they stated in Article 9 of their petition Hubert Fairley died some time during the year 1946 and Hattie Williams Primus, as his widow, received benefits from the United States Social Security Board and the defendant, in answer to said Article 9, admitted the same. Thus, they argue that at the time Hattie Primus entered into the marriage with John Primus she knew her first husband, Hubert Fairley, was still living. Of course, this does not necessarily follow because Hattie Primus could have honestly believed Hubert Fairley was dead when she married John Primus and she could have found out otherwise subsequent thereto. At any rate, we do not believe that her admission in Article 9 is binding on her because the answer must be read as a whole and we note that in Article 13 of the answer she states that when she married John Primus she thought Fairley was either dead or divorced. We might add that even though this admission is contained in Article 9 of the answer the plaintiff called Hattie Primus on cross-examination and as a result of plaintiff's questions she testified she did not know where or when Hubert Fairley died. The testimony given by her was contradictory to the admission in the answer and was destructive thereof and amounted to a waiver of the admission and leaves the question of whether the defendant knew that Hubert Fairley was living at the time she contracted the marriage with John Primus to be passed upon on the merits by the court. Bennett v. Thompson, La.App., 145 So. 783.
In seeking to establish the date of death of Hubert Fairley, Pearl Follins and Gertrude P. Gayton, two of the plaintiffs and sisters of John Primus, testified that Hattie Primus told them that Hubert Fairley had died in 1946 and that she had received social security payments as a result of his death. This was the only evidence offered by plaintiffs to establish the date of death of Hubert Fairley. Hattie Primus denied that she ever told Pearl Follins or Gertrude Gayton that Hubert Fairley died in 1946 and she further denied that she had ever received any letter relative to social security benefits. The District Judge, who was in a better position than are we to pass upon the credibility of the witnesses, found that the plaintiffs did not prove the marriage to be illegal for she stated in her reasons for judgment that plaintiffs "have not proved to the satisfaction of the court that Fairley's death occurred after the date of Hattie's and John's marriage". Further than this, the District Judge actually found that Hattie Primus married John Primus 24 years after the disappearance of Fairley and after she had heard that Fairley was dead. The testimony shows that Hattie Primus testified a woman named Jessie Weems told her she had heard Fairley was dead. However, the evidence is not too clear as to when the Weems woman made this statement to Hattie Primus. We do not, however, consider it of primary importance to reach a determination that the defendant actually believed that Hubert Fairley was dead at the time she contracted the marriage with John Primus. We say *322 this for the reason that in our opinion, considering all the facts and circumstances of this case, that Hattie Primus honestly and reasonably believed that Hubert Fairley had obtained a divorce from her at the time she entered the contract of marriage with Primus and she was accordingly in good faith.
When Fairley left, according to the testimony of Hattie Primus, he stated "he was gone and he was gonna get his divorce and I needn't worry about him no more". When asked whether or not Fairley ever got his divorce, she further testified, "I just really couldn't just say if he got it but what made me believe he got it was on account of he didn't come back no more after he left". Thus, since he was gone for 24 years and had carried out that part of his parting declaration for her not to worry about him any more, then it was reasonable for her to believe that he had carried out the other part of his statement, after the lapse of so many years, which consisted of his getting a divorce.
As heretofore pointed out in reaching a conclusion as to whether this defendant was in good faith it must be recognized that she is an illiterate colored woman and knows nothing about the necessity of her being cited in order for a divorce to be obtained. While it is true, as argued by counsel for plaintiffs, Hattie knew that she was married to Hubert Fairley, we do not follow counsel's reasoning that she should have made an extensive inquiry to have ascertained whether Fairley was living or whether he had obtained a divorce. In the first place, she had no conception of where he was and under the circumstances it would have been impossible for her, an illiterate colored woman, to have made an investigation of the matter. She wouldn't have known where to have begun. The case of Jones v. Squire, supra, is quite similar in its factual situation with the present case. There the daughter, sole heir of the deceased, Effie R. Delphine, sought to be declared the half owner of property acquired by the defendant, Pompey Squire, during the existence of his marriage with her mother. The evidence showed that the mother and Nelson Smith, two ex-slaves, were married in 1865 and soon thereafter Nelson Smith abandoned his wife. The court concluded that Smith abandoned plaintiff's mother without advising her of the fact of his leaving, his destination or possible return date. Not having heard from Smith for a period of 13 or 14 years, the plaintiff's mother married the defendant Squire, and the court held that she was in good faith. It is true in the Squire case that the defendant testified that he sought advice from the Clerk of Court who advised him that there was no obstacle to his marriage with the plaintiff's mother since her former husband had not been heard from for ten years and the court held that probably the defendant had advised the plaintiff's mother of this fact and it was due to the fact that she had probably been advised that the court held that she was in good faith. While there is no evidence in this record to show that anybody probably advised Hattie Primus that after Hubert Fairley had been gone for a period of 24 years that it was all right for her to go ahead and marry, yet Hubert Fairley did tell her when he was leaving that he was getting a divorce and we are of the opinion that she honestly and reasonably believed that at the time of the confection of her marriage with John Primus that said marriage was a valid one. The law presumes that a marriage is contracted in good faith and the burden of proving the contrary rests upon the party who alleges it and if there is any doubt on the issue it is to be resolved in favor of good faith.
Since the evidence establishes the fact that the marriage of Hattie Primus to John Primus in the year 1928 was in good faith on the part of Hattie Primus, then the burden of proof was on the party attacking the second marriage (plaintiffs herein) that the first marriage of Hattie to Hubert Fairley was still in existence. Lands v. Equitable Life Assurance Society of United States, 239 La. 782, 120 So.2d 74.
Accordingly, the judgment of the District Court recognizing the defendant as the widow *323 of John Primus and entitled as such to one-half of the property acquired during the existence of the community and to the other half as a result of inheritance from her deceased husband will be affirmed.
Affirmed.