185 So.2d 361 (1966)
Succession of Abel Mark THERIOT.
No. 2122.
Court of Appeal of Louisiana, Fourth Circuit.
April 4, 1966.
Rehearing Denied May 2, 1966.
Writ Refused June 21, 1966.
Roland R. Selenberg, Metairie, for Mrs. Theresa Meyn Theriot, defendant-appellant.
Plotkin, Nelkin & Alvarez, Owen J. Bradley, New Orleans, for Mrs. Rose T. Theriot, Mrs. Harris Roy Hebert, Mrs. Michael Mano, and Marion J. Theriot, plaintiffs-appellees.
Before McBRIDE, YARRUT, and BARNETTE, JJ.
*362 BARNETTE, Judge.
Appellant, respondent to the petition in the court below, claims rights as spouse in community and, on behalf of her minor son, claims rights as legal heir in the succession of the decedent. Appellant and the minor were sent into possession of the estate in their alleged capacities by judgment rendered March 12, 1963.
Subsequently, appellees filed a petition in the succession proceeding seeking to annul and set aside the judgment of possession and to be sent into possession themselves as surviving parent, sisters, and brother of the decedent. The petition was based on allegations that respondent, Theresa Meyn, was not legally married to the decedent and, hence, had no rights as spouse in community. There was no allegation attacking directly that portion of the judgment of possession which recognized Mark Abel Theriot as legal heir of the decedent, but respondent answered the petition both personally and as natural tutrix of her minor son, Mark Abel Theriot, and the issue of his rights in the estate was tried by consent. LSA-C.C.P. art. 1154.
After trial on the merits, judgment was rendered setting aside the previous judgment of possession, recognizing petitioners as legal heirs of the decedent and sending them into possession of his estate. Respondent Theresa Meyn has appealed suspensively and devolutively from this judgment.
The undisputed facts show that appellant and the decedent began living together as husband and wife in 1946, even though they were aware that at least one of them, the decedent, was then legally married to someone else. Decedent was not divorced from his first wife until January 22, 1948. Appellant originally married one Harvey Fairburn in 1939 and separated from him in 1940. Although she claims to have been divorced from Fairburn by some proceeding brought by him somewhere in Texas, the only evidence of the divorce is her own testimony as to a statement made by her sister (who was married to Fairburn's brother) that Fairburn had displayed divorce papers to the sister sometime in the early 1940's.
Appellant concedes that her cohabitation with the decedent was an illicit arrangement when it began, but claims that it was converted to a legal marriage by virtue of a ceremony performed, July 15, 1950, before a justice of the peace at Grand Isle, Louisiana. There is no record of the marriage on file in the proper registry of Jefferson Parish, and appellant was unable to present any document establishing performance of the ceremony or any witness to the ceremony.
Appellant has attempted to prove the marriage by secondary evidence in the nature of a joint bank account, the minor's birth and baptism certificates, an act of sale of real estate to the decedent, changes of beneficiaries in insurance policies, and the death certificate of the decedentall of which contain declarations that the decedent was married to appellant. She also relies on the rule of jurisprudence that when two persons live together over a period of years as man and wife a valid ceremonial marriage is presumed to have taken place, and that persons asserting the contrary must so prove.
The presumption of marriage arising from cohabitation and a general reputation that the parties are man and wife is firmly entrenched in our jurisprudence. Succession of Anderson, 176 La. 66, 145 So. 270 (1932); Bothick v. Bothick, 45 La.Ann. 1382, 14 So. 293 (1893); Baker v. Williams, 176 So.2d 766 (La.App. 3d Cir. 1965); Succession of Leduc, 153 So.2d 581 (La.App. 4th Cir. 1963); Comment, 7 Tul.L.Rev. 599 (1933). Appellant, relying on this line of jurisprudence, claims the benefit of this presumption based upon her proof of the general reputation of a marriage between herself and the decedent. In this connection secondary evidence was properly admitted.
The fatal defect in appellant's contention, and that which distinguishes her *363 case from those cited above, is the fact that her cohabitation with decedent admittedly began in concubinage, in which illicit relationship they lived from 1946 until their alleged marriage in 1950. This fact contradicts the presumption of a valid marriage. It is a prerequisite to the presumption that from its beginning the relationship had the appearance and general reputation of marriage and that the parties were free to marry. Powers v. Executors of Charbmury [Charmbury], 35 La.Ann. 630 (1883); Blasini v. Succession of Blasini, 30 La.Ann. 1388 (1878). By admitting the less than marital nature of their relationship, appellant has deprived herself of the benefit of the presumption and must bear the burden of showing that some change took place which converted the concubinous union into a marriage valid under the laws of this state.
The evidence submitted does not discharge that burden. The only direct evidence of a valid marriage ceremony is appellant's own testimony. We are well aware that under our jurisprudence the secondary evidence is admissible even if appellant offers no explanation for the absence of documentary evidence. Succession of St. Ange, 161 La. 1085, 109 So. 909 (1926); Holmes v. Holmes, 6 La. 463 (1834); Comment, 7 Tul.L.Rev. 599 (1933). However, the secondary evidence shows only that the parties conducted their affairs as husband and wife; it does not show that they were married on July 15, 1950, at Grand Isle. As we have already pointed out, the value of the secondary evidence in showing that the parties held themselves out as husband and wife to bring into effect the presumption of a legal marriage is negated by appellant's admission that their cohabitation began as an illicit union. The evidence does not show, and appellant has not proved, that there was a change in the status of that union. We conclude that appellant did not show that there was a valid ceremonial marriage existing between the decedent and herself.
Appellant argues in the alternative that she and the minor child are entitled to their rights in the succession as the putative wife and child of the decedent under the appropriate articles of the Civil Code.
"The marriage, which has been declared null, produces nevertheless its civil effects as it relates to the parties and their children, if it has been contracted in good faith." LSA-C.C. art. 117.
"If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor, and in favor of the children born of the marriage." LSA-C.C. art. 118.
The fallacy in this argument is that the codal articles begin with the premise that a marriage has been performed. As discussed above, there has been no showing of a marriage between appellant and the decedent here. But even if we assume, arguendo, that a marriage took place, the good faith of appellant is highly questionable. The record of her prior marriage establishes a defect which, if still existing, would render the purported marriage absolutely null. To support her claim of good faith, appellant offers only her own testimony that her sister told her that Fairburn, her first husband, displayed divorce papers to the sister. She also testified that she had received some form of legal papers in the mail from somewhere in Texas relating to divorce proceedings. She could not produce the papers, nor could she recall their content more specifically than that they were "divorce papers." This testimony, standing alone, might be enough to establish appellant's good faith in entering a second marriage, if it were thoroughly credible. But appellant, according to her own testimony, made no attempt to contact Fairburn in order to locate a record of a divorce even though she knew that his brother was living in Ponchatoula at the time of the litigation, nor did she attempt to secure as a witness her own sister to testify directly to having seen the divorce papers which Fairburn allegedly displayed to her.
These failures of proof do not show directly that appellant was not acting in good *364 faith at the time of the alleged marriage, but they do call into serious question the credibility of her assertion that she acted under a reasonable belief that she was free to marry. Once the prior marriage was shown, the burden was on appellant to show her good faith in entering the second. Lands v. Equitable Life Assur. Soc., 239 La. 782, 120 So.2d 74 (1960). She has failed to discharge that burden and remains under the absolute bar of her prior marriage to the second marriage.
Under the facts as discussed above, it is clear that the trial court correctly concluded that no marriage, legal or putative, had been shown to exist between appellant and decedent. Since appellant's claim and her rights under the judgment are based on the assumption that she was a spouse in a community existing between herself and the decedent, the judgment annulling the prior judgment sending her into possession of one-half of the estate is correct and must be affirmed.
We have given careful consideration to the legal effect of this litigation on the minor son, and, admittedly, we have tried to find some way in which to protect him from the stigma to which this proceeding must inevitably lead. It is regrettable that the lure of inheritance of a very small estate would motivate the grandmother and the aunts (one of whom was godmother) and uncle to relegate their acknowledged grandson and nephew to the status of illegitimacy in order to accomplish their purpose. But the fact that he was represented in the proceeding below by his tutrix, and the fact that no marriage can be shown to have existed between the parties whose names appear as his parents on his birth and baptismal records, force us to conclude, however reluctantly, that the minor occupies no better position than that of a natural child, informally acknowledged, of the decedent. As such he cannot inherit from the decedent ahead of the ascending and collateral relations and is left to whatever claim to alimony he might be able to assert. LSA-C.C. art. 919.
For the reasons given above, the judgment appealed from is affirmed. Appellant is to pay the cost of this appeal.
Affirmed.