BOLIN, Judge.
Plaintiff filed this suit seeking a partition by licitation of property he claimed to own in indivisión with the defendants. After suit was filed, A. B. Greer died and his heirs were substituted as party plaintiffs. The pertinent facts are as follows:
Reverend Wake Hatter married Mattie Williams in 1873 and seven children were born of this marriage. Mattie died in 1895 and about a year later Hatter married Sarah Stewart. Sarah had previously contracted a marriage with another man in 1884 and he had deserted her some time around 1888.
In 1910, during his marriage to Sarah Stewart, Hatter purchased the property in question. He subsequently died intestate in 1930, as did Sarah in 1931.
In 1936, A. B. Greer, the plaintiff, and J. H. Odom purchased the interests of three of Wake Hatter’s heirs, John Hatter, Amos Hatter and Arch Hatter, at a judicial sale. In 1949 Greer purchased from the heirs of Sarah Stewart whatever interest they might have in the property. Also in 1949, James E. Gantt purchased the interest of Mattie Hatter Bishop, another heir of Wake Hatter.
The trial court held that since Sarah Stewart had been shown to have contracted a prior marriage, the plaintiffs, who were urging the civil effects of her second marriage, had the burden of proving this prior marriage had been dissolved or that Sarah Stewart had been in good faith in believing she could lawfully marry Wake Hatter. The court further held that this burden was not met and therefore neither Sarah nor her heirs acquired any interest in the property. The court also found that the judicial sales to Greer and Odom and the sale to Gantt were valid sales.
Plaintiffs appeal, alleging error in the trial court’s placing the burden of proving Sarah’s good faith on them. Alternatively, they allege the court erred in finding this burden was not met. They also allege error in the court’s admission into evidence of two affidavits which were objected to as hearsay.
The Hatter defendants appeal, alleging the trial court erred in finding the judicial sales to Odom and Greer and the sale to Gantt to be valid sales. We affirm the judgment in all respects.
The major issue is whether Sarah Stewart acquired any interest in the property resulting from her alleged marriage to Wake Hatter. We can answer this in the affirmative only if: (1) the “marriage” was in fact a valid one or, in lieu thereof, (2) Sarah entered into this invalid marriage “in good faith.” La.Civil Code article 117.
Plaintiffs strongly urge there is a presumption of validity of the second marriage and the burden of proving invalidity is upon the party attacking it. As a result, they contend that unless defendants can show that Sarah’s first marriage was not dissolved by death, divorce or annulment, they have no further burden of proof.
Defendants have shown the first marriage was not dissolved by death. The evidence indicates Sarah’s first husband did not die until about six years after her death. Defendants have also shown, through the testimony of the deputy clerk of court, that this marriage was not dissolved by divorce or annulment in Claiborne Parish, the parish in which Sarah and her first husband lived as man and wife. Plaintiffs contend that unless defendants show the first husband did not divorce Sarah in any of the various other places in which he lived, the presumption of the validity of the second marriage has not been overridden and consequently they have no need of proving Sarah’s good faith.
*1053 We cannot agree. While our jurisprudence has recognized this presumption of validity, it applies only in favor of an “innocent” spouse, i. e., one who has contracted a marriage under no legal impediment. Succession of Davis, 142 So.2d 481 (La.App.2d Cir. 1962); King v. McCoy Bros. Lumber Co., 147 So.2d 77 (La.App.2d Cir. 1962). Where there is a potential impediment to the second márriage, as in the case where a party deserts or abandons a spouse of a prior marriage in another state and remarries in Louisiana without reason to believe the first marriage is dissolved, the burden of proof is on that party to show either that the first marriage was dissolved or that he or she had good reason to think so in order for the presumption to apply. Lands v. Equitable Life Assurance Society of U.S., 239 La. 782, 120 So.2d 74 (1960).
We think the same rule should apply in this case. Although Sarah did not desert her husband, she did remarry with full knowledge of her prior marriage and the fact that nothing was done on her part to end that marriage. She would have been in the better position to know whether a divorce had been obtained and where it could possibly have been obtained. Defendants have shown all that can reasonably be expected within the limited knowledge available to them. Under these circumstances, once the defendants showed that this prior marriage had not been dissolved by death and had not been dissolved by divorce in the parish where the couple had lived as man and wife, it became incumbent upon plaintiffs, who were urging the civil effects of this marriage, to prove that the prior marriage had been dissolved or that Sarah was in good faith in believing that it had.
The plaintiffs have largely relied on a recent Supreme Court decision, Gathright v. Smith (No. 61289, June 19, 1978) (La.1978), to support their position. We do not find this case controlling. There, the heirs of the spouse whose marriage was under attack contended that the burden of proving bad faith is always on the party attacking the second marriage, and that only when this bad faith has been established does the burden of proving the first marriage was no longer in existence shift to the defender of the second marriage. The court, finding this contention erroneous, held that once the prior marriage was proved to be undissolved[1] the burden of proving good faith is on the party whose marriage is under attack. It did not hold, as plaintiffs urge, that conclusive proof of the undissolved character of the first marriage is necessary in order to shift the burden of proof. It merely held that if this is shown, the burden shifts.
Plaintiffs alternatively contend that even if they had the burden of proof, this burden was met and the trial court erred in not so holding. We disagree. Although the testimony regarding this matter is conflicting, there is ample evidence in the record to support the trial court’s conclusion.
Plaintiffs also allege error in the trial court’s admission into evidence of two affidavits objected to as hearsay. The first of these two affidavits was taken of two now-deceased witnesses when this same suit was filed in 1949. The second was taken of two witnesses in 1974 and recited substantially the same information as the first. One of these two witnesses also testified at trial.
To determine whether Sarah Stewart was in good faith in believing she was married to Wake Hatter, Sarah’s state of mind when she entered into a marriage in 1896 is very relevant. When this case came to trial there was no one alive with firsthand knowledge as to this crucial question. The affiants in the 1949 affidavit were both around 70 years old and both had firsthand knowledge of the situation. We therefore hold that under these special circumstances of necessity, the trial court was correct in considering this affidavit. Salley Grocer Company v. Hartford Accident and *1054 Indemnity Co., 223 So.2d 5 (La.App.2d Cir. 1969). Since the 1974 affidavit recited substantially the same information, its introduction into evidence was harmless error, despite the fact that it constituted hearsay and double hearsay.
The Hatter defendants have also appealed. They alleged the trial court erred in holding valid the judicial sales of the interests in this property of three children of Wake Hatter. This allegation is based on their contention that these sales were actually made prior to the filing of any suit or the rendition of any judgments. We find no evidence to support this contention.
The Hatter defendants also allege the trial court was in error in holding the sale of the interest of Mattie Hatter Bishop to James E. Gantt valid. They allege this sale was for convenience only, i. e., to allow Gantt to protect her interest pending the outcome of this litigation. Although Mrs. Gantt testified this was partly the reason, she further stated that this transfer was also to ensure payment of a debt owed by Mattie’s husband to Mr. Gantt. Also, there was no counter letter executed. Under these circumstances, we find no error in the trial court’s conclusion.
The judgment is affirmed at appellant’s cost.

. We note that in Gathright there was conclusive proof that the prior marriage was undissolved since there was record of a divorce obtained by the first husband well after the date of the wife’s second marriage. Here, if no divorce was ever obtained by Sarah’s first bus-band, defendants would be unable to conclusively prove the marriage was undissolved.