STOKER, Judge.
This is an action to determine the respective interests of the parties to two parcels of immovable property and certain movables located in the City of Abbeville, Vermilion Parish, Louisiana.[1] The immovable properties were purchased in 1941 and 1954 under deeds in which the purchaser was described as “Willis Manuel, married to and living with Dora City.” The trial court held that the Succession of Dora City owned an undivided one-half interest in the properties.
The plaintiff in this action is the Succession of Dora City, a/k/a Clodora Sitez, through its representative, Lodiana Walker Manuel, who is the child of Dora City. (The Succession of Dora City will be referred to hereinafter as plaintiff.) The defendant is the Succession of Willis Manuel, a/k/a Willis Brooks, through its representative, Dudley Brooks, who is the child of Willis Brooks and Annie Anderson. (The Succession of Willis Manuel will be referred to hereinafter as defendant.) Although these two successions are the officially named parties in the pleadings and are acting through their respective succes *469 sion representatives, Lodiana Walker Manuel and Dudley Brooks, these two individuals are the primary parties at interest, They are referred to interchangeably by the trial court and we find it difficult not to do so ourselves. Understanding the relationship between the two successions as parties and the two representatives may be helped by stating at this point the broad issue in this case.
The issue is whether the trial court correctly presumed that Dora City and Willis (Brooks) Manuel were married. There is no issue as to the legitimacy of Lodiana Walker Manuel. She does not claim to be a child of Willis Manuel. Lodiana’s interest is restricted to her mother’s share of a community which the plaintiff (acting through Lodiana) claims existed between Dora City and Willis Manuel. The plaintiff does not make any issue of the right of the defendant succession to its proportionate share of the community property of Willis Manuel, deceased, which belonged to the community regime which formerly existed between Dora City and Willis Manuel. What is made an issue by the defendant (the Succession of Willis Manuel, acting through its representative Dudley Brooks), is the validity of the claimed marriage of Dora City and Willis Manuel.
We summarize the specific issues as follows: (1) if the plaintiff establishes that a legally recognizable marriage existed between Dora City and Willis Manuel, the property involved in this case (acquired as community property by Dora and Willis), goes one-half to the plaintiff and one-half to the defendant, but (2) if defendant establishes (as it attempts to do) that there was no marriage between Dora and Willis, there was no community regime and all the property falls to the defendant. The foundation of defendant’s claim is that there was an undissolved marriage in existence between Willis (Brooks) Manuel and Annie Anderson (parents of Dudley Brooks) at the time Dora and Willis began living together. Therefore, defendant claims there could be no presumption of marriage between Dora and Willis. On the issues framed above the trial court found in favor of the plaintiff, holding there was a valid marriage between Dora and Willis. From this judgment the defendant has appealed. We affirm,
In reasons for judgment the trial court ^eld ag f0}i0WS-
“RULING OF THE COURT
“THE COURT. This case comes before the Court via a Petition for Declaratory Judgment, wherein the plaintiff seeks to be recognized as heir to the Estate of Dora City, also known as Cladoria [sic] Sitez. Lodiana Walker Manuel is the plaintiff in this case, and testified that she was born in 1928, I believe, if my memory serves me correctly, and that at that time she was living with her mother, Dora City, and Willis Manuel, and that she lived with them throughout her childhood, womanhood, until she came [sic] an adult. She testified that she saw her mother, and in fact, she herself worked side by side with Willis Manuel in the fields, cutting cane, picking cotton, hoeing cotton, and doing all of the things necessary to produce a crop, or that was necessary to produce a crop in the 1930’s. She testified, in addition, that her mother worked by taking in washing, and doing babysitting chores, and also, doing household chores for the Broussards, and for other people in this community. The evidence is clear and convincing to this Court that Dora City and Willis Manuel represented themselves to be husband and wife to the Broussards and to people in this community.
“The Court feels that the law is clear that one of the strongest presumptions that exists, and particularly in this case, were that Willis Manuel and Dora City were married, i.e., lived together. There’s been no evidence of a marriage certificate, but they held themselves out as man and wife. There’s no evidence that they weren’t married. That the presumption must stand that they were in fact married.
*470 “In the final analysis, the Court feels that the evidence is overwhelming, that Lodiana Walker Manuel should be recognized as the heir of the Estate of Dora City. And the Court recognizes that Dora City’s estate comprises of [sic] one-half of the property acquired during the fifty-two (52) years that she was presumably married to Willis Manuel, also known as Willis Brooks. And therefore, decides in favor of the plaintiff, and assesses all costs against the defendant.”
PRESUMPTION OF MARRIAGE OF DORA CITY AND WILLIS MANUEL
A marriage may be proved by reputation. Oliphant v. Louisiana Long Leaf Lumber Co., 163 La. 601, 112 So. 500 (1927); Succession of Leduc, 153 So.2d 581 (La.App. 4th Cir.1963). See Comment, 7 Tulane Law Review 599 (1933). In Baker v. Williams, 176 So.2d 766 (La.App. 3rd Cir.1965) this Court said:
“Under our jurisprudence, where a man and woman have lived together publicly as husband and wife for a period of time, there arises a presumption that they are lawfully married, and this presumption is one of the strongest known to our law. Succession of Leduc, (La. App. 4 Cir., 1963), 153 So.2d 581. Under these circumstances, persons asserting that there was no marriage have the burden of proof.”
Although the claimant lost on the facts in Succession of Theriot, 185 So.2d 361 (La.App. 4th Cir.1966), writ refused, 249 La. 464, 187 So.2d 443 (1966), the court said:
“The presumption of marriage arising from cohabitation and a general reputation that the parties are man and wife is firmly entrenched in our jurisprudence. Succession of Anderson, 176 La. 66, 145 So. 270 (1932); Bothick v. Bothick, 45 La.Ann. 1382, 14 So. 293 (1893); Baker v. Williams, 176 So.2d 766 (La.App. 3d Cir. 1965); Succession of Leduc, 153 So.2d 581 (La.App. 4th Cir.1963); Comment, 7 Tul.L.Rev. 599 (1933). Appellant, relying on this line of jurisprudence, claims the benefit of this presumption based upon her proof of the general reputation of a marriage between herself and the decedent. In this connection secondary evidence was properly admitted.”
Succession of Rossi, 214 So.2d 223 (La.App. 4th Cir. 1968), writ refused, 253 La. 66, 216 So.2d 309 (1968) commented on the presumption, settled in jurisprudence, “that a presumption of marriage arises from cohabitation and a general reputation that the parties are man and wife.” The court added:
“However, in order for the presumption to arise, from its beginning the relationship must have the appearance and general reputation of marriage; if the relationship began in open concubinage, the presumption does not arise and the litigant seeking to prove the marriage must bear the burden of showing that some change took place in the relationship which converted the illicit union into a marriage valid under the laws of this state, Succession of Theriot, La.App., 185 So.2d 361 and the cases cited therein.”
Cf. Juneau v. Alexander, 446 So.2d 533 (La.App. 3d Cir.1984), writ denied, 449 So.2d 1350 (La.1984).
The evidence in this case establishes that Dora and Willis lived together as man and wife for some fifty-two years, and there is no suggestion that the relationship began illicitly or as one of open concubinage. Under the circumstances we affirm the trial court’s finding of fact that there was a presumption of marriage between Willis (Brooks) Manuel and Dora City.
We now turn to the defendant’s principal defense which was that Willis (Brooks) Manuel was never divorced from his first wife, Annie Anderson.
PROOF OF NON-DISSOLUTION OF MARRIAGE OF ANNIE ANDERSON AND WILLIS MANUEL
For the remainder of this opinion, we will refer to Dudley Brooks, the succession representative of the defendant, simply as *471 “Brooks” whether it is in his capacity as a witness or as succession representative.
The record shows Brooks offered and introduced a certified document described as a “Marriage License, recorded under Docket No. 15067 in the records of the Clerk for Lafayette Parish and marked as a true copy.” For some reason, this document was not included in the record. Brooks testified that the license showed a marriage between Mr. Willis Brooks and Miss Annie Anderson on January 7, 1925. The record shows that Annie Anderson died after suit was filed but prior to trial. There is no dispute either that Dudley Brooks is the child of Annie and Willis or that Willis Brooks was the same person as the Willis Manuel presumed to have been married to Dora City. Additionally, there is no claim that Willis Manuel was the father of Dora City’s children.
Brooks testified that Annie and Willis were married and never divorced. Brooks supposedly did research at the courthouses in Lafayette and Orleans Parishes and did not find any record of a divorce. Brooks admitted, however, that there was no examination of the records of Vermilion and Iberia Parishes.
Defendant contends the above described evidence, without more, is sufficient to defeat any presumption in favor of the marriage between Willis and Dora. According to defendant, proof of a prior lawful marriage defeats the presumption of marriage in favor of a second union and shifts the burden of proving dissolution of the prior marriage to the party asserting rights under the later marriage. We do not agree this is a correct statement of the law.
In the case of Lands v. Equitable Life Assurance Society of U.S., 239 La. 782, 120 So.2d 74 (1960), [Footnote omitted], our Supreme Court stated as follows:
“We are in full accord with the majority view that a presumption exists as to the validity of a second marriage and that the burden of proof to show that it is a nullity is on the party attacking it. We do not think, however, that this presumption should be available to one who has deserted or abandoned a spouse of a prior marriage in another state and subsequently in this state remarries in bad faith and without reason to believe that the first marriage has been dissolved by death, divorce, or annulment. Whether a party in such a case is innocent and in good faith must depend upon the circumstances and facts of each case, and where innocence or good faith is once established, the burden of proof to show that the first marriage is still in existence is on the party attacking the second marriage. However, in such a case if bad faith is shown, the burden of proof to show that the first marriage was dissolved by death, divorce, or annulment prior to the second marriage is on the party whose marriage is under attack.
“We are mindful that as a general rule of law when a man and a woman marry and live together as husband and wife, they are presumed to have contracted the marriage in good faith. As we view the matter, however, for a party to a second marriage to be able to avail himself of the presumption of validity of such a marriage where it is shown that he has deserted his first spouse in another state, he must show that he entered into the second marriage in good faith.”
The above stated principles were explained in the case of Gathright v. Smith, 368 So.2d 679 (La.1978) to mean that the presumption of the validity of a second marriage exists, but does not run in favor of the spouse who has been shown to have a prior undissolved marriage, unless the spouse can show good faith in contracting the second marriage. In a footnote, the court noted the difference between the effort to determine the validity of a marriage and the good faith of parties to invalid marriages. As we understand it, the good faith at issue in Lands and Gathright allowed the previously married spouses to rely on the presumption of a valid second marriage, as distinguished from the good faith of parties to an invalid marriage, which entitles them to the position of “putative” spouses.
*472 In the present case, it was Willis Manuel, parent of Dudley Brooks, who was alleged to have been previously married, not Dora City, parent of Lodiana Walker Manuel. Under Lands, Dora City or her heirs would be entitled to rely on the presumption of a valid second marriage, without proof of Dora’s good faith. There is ample evidence in the record, however, including Dudley Brooks’ own testimony, that Dora City was in good faith and never knew Willis was ever married to Annie Anderson.
Thus, the real question here is whether the defendant carried its burden of proving the first marriage was still in existence. We agree with the plaintiff that this matter involves the credibility of the witnesses and that the trial court’s finding in favor of plaintiff should not be disturbed in the absence of manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Defendant’s evidence consisted solely of the marriage license and Brooks’ own testimony that he did not know of any divorce. Brooks testified that he was born in 1925 and that one of his two brothers, also said to be a child of Willis and Annie, was born one or two years after himself. Brooks lived in Youngsville, Louisiana, until about 1931. He then moved to Port Arthur, Texas, until about 1936, when he returned to Youngsville. At the age of 15 he moved permanently to New Orleans. Brooks did not see or visit Willis between 1940 and 1974, but heard about him through relatives, including Willis’ sister who was living in Abbeville at the time of trial but was not called to testify. Brooks visited with Dora and Willis after 1974, but Brooks admitted Dora never told Brooks she knew Willis was ever married to Annie Anderson. Evidence of a similar nature was found insufficient to overcome the presumption of a valid second marriage in Zanders v. Zanders, 434 So.2d 1213 (La.App. 1st Cir.1983). We cannot say the trial court erred in taking the same position here.
For the foregoing reasons the judgment of the trial court is affirmed. The costs of this appeal are assessed to defendant-appellant.
AFFIRMED.

. The property in question is described as follows:
"IMMOVABLES
(A) That certain parcel of ground lying and being situated in the Town of Abbeville, Vermilion Parish, Louisiana having a front of 50 feet on Public street; being bounded on the North by said Public street; East by Francis Robinson; South by Vendors or their assigns; and West by Vendors herein along with all buildings and improvements thereon situated and thereto belonging.
(B) One certain lot or parcel of ground lying and being situated in the Town of Abbeville, Vermilion Parish, Louisiana measuring 50 feet front on the North line by a depth of 130 feet between parallel lines, North and South, being bounded North by Street, East by Annie Belle Broussard, South by Chomie Brooks or assigns, and West by Jonaus Sawyer, et als, or assigns, with all buildings and improvements thereon situated and thereto belonging.
"MOVABLES
(A) Contents of the family home located at 1601 Wasbash Street, Abbeville, Louisiana.”