# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 08-1088

**SUCCESSION OF DAVID JONES, JR. A/K/A
DAVID JONES, III A/K/ A DAVID JONES**

************

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT,
PARISH OF RAPIDES, PROBATE NO. 35,824
HONORABLE F. RAE SWENT/PATRICIA F. KOCH, DISTRICT JUDGE

************

**JIMMIE C. PETERS
JUDGE**

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and
Michael G. Sullivan, Judges.

**REVERSED, RENDERED, AND REMANDED.**

**William F. Henderson**
**Attorney at Law**
**910 Foisy Avenue**
**Alexandria, LA 71301**
**(318) 449-9857**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Harriett Boyer Jones**

**Ricky L. Sooter**
**George I. Fine**
**Provosty, Sadler, deLaunay, Fiorenza & Sobel**
**Post Office Drawer 1791**
**Alexandria, LA 71309-1791**
**(318) 445-3631**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Ethel Jones**

PETERS, J.

This litigation involves, in part, the determination of the marital status of David Jones, Jr., who is now deceased. Two women, Harriett Boyer Jones (Harriett) and Ethel LeDuff Jones (Ethel), both claim to have been his legal spouse and entitled to all legal rights arising from that status. The trial court declared Ethel to be the sole surviving spouse, and Harriett has appealed that determination. For the following reasons, we reverse the trial court judgment, designate Harriett as David Jones, Jr.'s legal surviving spouse, but recognize Ethel as his putative spouse. We remand the matter to the trial court for it to determine the proper disposition of the assets of the estate of David Jones, Jr. in accordance with law.

## DISCUSSION OF THE RECORD

Certain facts are not in dispute. David Jones, Jr. (David) and Harriett were married in Bexar County, Texas on October 8, 1956, and three children were born of that marriage: Carol Ann, David Allen, and June René. All of these children are now competent majors. David and Harriett were divorced on February 24, 1976. David had made a career of the military and was stationed in Missouri at the time of the divorce.

After the divorce, Harriett returned to her family in Houston, Harris County, Texas. Thereafter, David retired from the military and returned with his son to live on family property in Alexandria, Rapides Parish, Louisiana. Still, he maintained communications with his former wife. In fact, on April 12, 1978, David and Harriett remarried in Houston.

The second marriage did not last. Four months later, on September 12, 1978, David filed a petition against Harriett seeking to be awarded a separation

from bed and board.[1]  In his petition, David, who was represented by counsel, sought and obtained the appointment of an attorney to represent his absentee wife. The attorney appointed to represent Harriett filed an answer to the petition on October 5, 1978.  In that answer, the attorney attached a letter he had received from Harriett in response to his correspondence to her.  In her letter, Harriett asserted that she contested the suit for separation from bed and board because the assertions made by her husband were false; that she had resided in Houston for one year prior to the date of the letter (September 28, 1978); that she was currently residing in an apartment leased for her by David; that she had not left Houston for any reason during 1978; that David had separated from her; and that David was guilty of adultery.

In response, David filed a supplemental and amending petition on February 2, 1979, wherein he acknowledged that the marriage took place in Houston, and not Rapides Parish, but argued that because he and Harriett never lived together thereafter, he should be awarded an annulment of that marriage.  In the alternative, he maintained his request for a separation from bed and board.

Because of the physical incapacity of the attorney appointed to represent Harriett, a second attorney was appointed to represent her as an absentee.  This appointment was made by the trial court on April 18, 1979.  On May 1, 1979, that attorney filed an answer to the supplemental and amending petition wherein he reiterated the previously filed answer.  A subsequent pleading filed by the appointed attorney on September 21, 1979, reflected that he had forwarded a copy

---

[1]The petition implies that the parties were married on April 12, 1978, in Rapides Parish and physically separated the same day.  It further implies that Harriett was in Rapides Parish, but immediately after the marriage, "packed her belongings and went back to Houston, Texas." However, it does not specifically state that the parties were married in Rapides Parish, and there is no dispute but that the second marriage occurred in Houston.

of the supplemental and amending petition to Harriett, but that it was returned as not deliverable. This pleading represents the last filing in the suit record.

David and Ethel were married in Mansura, Avoyelles Parish, Louisiana, on April 8, 1983, and lived together as husband and wife in Rapides Parish until David's death on March 31, 2005. After David's death, Ethel filed a petition to probate his statutory testament and to be named executrix of his succession. On April 25, 2006, Harriett filed a petition seeking to have Ethel's marriage to David declared absolutely null and to be placed in possession of her share of the community property belonging to her as David's surviving spouse. The trial of this issue resulted in a trial court judgment declaring Ethel to be David's legal wife and surviving spouse and recognizing her as the individual entitled to all legal rights associated with that status. This judgment gave rise to the appeal now before us.

**OPINION**

Harriett's five assignments of error can be reduced to two arguments: (1) the trial court erred in finding that Ethel was David's legal wife, and (2) the trial court erred in failing to admit into evidence search certificates from Harris County, Texas and Avoyelles Parish and Rapides Parish, Louisiana. We will address the evidentiary issue first.

*Evidentiary Ruling*

After her father's death, June René searched the public records of Harris County, Avoyelles Parish, and Rapides Parish, seeking evidence of a second divorce by her father from her mother. At trial, Harriett sought to introduce three documents, obtained by June René from the Custodian of Records from each location, which purported to show that no divorce records existed. Ethel objected

3

to the introduction of these documents because Harriett had not included them on her pre-trial list. While acknowledging that they were not listed on the pre-trial exhibit list, Harriett asserts that they should have been admitted because they were already in the record, having been made a part of her prior motion for partial summary judgment. The trial court noted that it had a problem with the lack of notice, and Harriett made a proffer of these documents.[2]

The trial court is given vast discretion in its evidentiary rulings, and its decision to admit or exclude evidence will not be reversed on appeal in the absence of an abuse of discretion. *Bellsouth Telecomm., Inc. v. City of Lafayette*, 05-1478, 05-1505 (La.App. 3 Cir. 1/5/06), 919 So.2d 844. After reviewing the proffered evidence and the record, we find no abuse of discretion on the part of trial court in excluding the documents from evidence. At the same time, we note that although the actual documents were not introduced into the record, the information they contained was elicited from June René's testimony as to the actions she took in furtherance of her search and the answers she received by contacting the three custodial offices.

### *"Second in Time" Marriage*

As a general rule, "[a] marriage is absolutely null when contracted without a marriage ceremony, by procuration, or in violation of an impediment." La.Civ.Code art. 94. An existing marriage qualifies as such an impediment. La.Civ.Code art. 88. Furthermore, "[a] judicial declaration of nullity is not required, but an action to recognize the nullity may be brought by any interested person." La.Civ.Code art. 94.

---

[2] The trial court did not directly rule on the admissibility of the documents, but by accepting them as a proffer, it is assumed that the trial court sustained Ethel's objection.

An exception to the general rule is the "second in time" marriage presumption as set forth by the supreme court in *Lands v. Equitable Life Assurance Society of U.S.*, 239 La. 782, 120 So.2d 74 (1960). After quoting extensively from 35 Am.Jur., Marriage, Sections 195 and 197, with regard to the "second in time" marriage presumption, the supreme court stated:

> We are in full accord with the majority view that a presumption exists as to the validity of a second marriage and that the burden of proof to show that it is a nullity is on the party attacking it. We do not think, however, that this presumption should be available to one who has deserted or abandoned a spouse of a prior marriage in another state and subsequently in this state remarries in bad faith and without reason to believe that the first marriage has been dissolved by death, divorce, or annulment. Whether a party in such a case is innocent and in good faith must depend upon the circumstances and facts of each case, and where innocence or good faith is once established, the burden of proof to show that the first marriage is still in existence is on the party attacking the second marriage. However, in such a case if bad faith is shown, the burden of proof to show that the first marriage was dissolved by death, divorce, or annulment prior to the second marriage is on the party whose marriage is under attack.
>
> We are mindful that as a general rule of law when a man and a woman marry and live together as husband and wife, they are presumed to have contracted the marriage in good faith. As we view the matter, however, for a party to a second marriage to be able to avail himself of the presumption of validity of such a marriage where it is shown that he has deserted his first spouse in another state, he must show that he entered into the second marriage in good faith.

*Id*. at 76-77 (footnote omitted).

In *Gathright v. Smith*, 368 So.2d 679, 683 (La.1978) (footnote omitted), the supreme court reiterated the holding of *Lands*:

> Hence, the holding of Lands is the following: (1) there is a presumption of the validity of a second marriage and the burden of proving invalidity is upon the party attacking it, (2) the presumption of validity does not run in favor of a spouse who has been shown to have a prior undissolved marriage, unless that spouse can show that he or she contracted the subsequent marriage in good faith.

In its Written Reasons for Judgment, the trial court stated that a key issue before it was "the good faith of both Colonel Jones and Ethel LeDuff Jones, and whether they had an honest and reasonable belief that their marriage was entered into in good faith by either or both of them." We disagree with the manner in which the trial court couched the issue. The issue of good faith should not have entered into the equation. It does not become an issue, according to the decision in *Lands*, unless the party attempting to rely on the presumption was the party with the prior undissolved marriage. In this case, it was David, not Ethel, with the alleged prior undissolved marriage. Ethel's marriage, according to the decision in *Lands*, is presumed to be valid, and the burden of attacking its validity lies with Harriett.

Because the trial court's legal error applying the wrong burden of proof interdicted its finding on whether the decedent's marriage to Ethel was absolutely null, the manifest error standard of review does not apply. Accordingly, we will now conduct a *de novo* review on this issue. *Lanningham v. Walton*, 06-1103 (La.App. 3 Cir. 2/7/07), 950 So.2d 922.

Harriett testified that she never received notice of any divorce, and that she considered herself married to David. Harriett, David Allen, and June René all testified that David visited them in Houston after he returned to Louisiana. Initially, the visits were once or twice per week, but occurred less and less as the years passed. Harriett claimed to have spoken to him monthly by telephone, and the children testified that they only learned of David's marriage to Ethel after his death.

Vivian Bennett, David's sister, testified that, although she spoke to her brother on a daily basis, she had no knowledge of his divorce from Harriett, the

6

remarriage, or the petition for separation from bed and board. Darrell Woods, an employee of David's, testified that David told him that he was married to Harriett, but never mentioned divorce. Although he knew of Ethel, he said that David never referred to her as his wife.

With regard to the search for a divorce judgment, Harriett clearly established that she and David were married a second time on April 12, 1978, and that she remained domiciled in Harris County, Texas, from that day forward. Her evidence further establishes that David remained domiciled in Rapides Parish, Louisiana, from that day until his death. David's 1978 petition for separation from bed and board lists his domicile as Rapides Parish; all of his employment contracts with the Rapides Parish School Board, for whom he taught from 1979 through 2002, lists his address as Rapides Parish; and his sister, Vivian Bennett, testified that David lived on family property in Rapides Parish from his 1977 retirement from the military through the time of his death.

While there does exist evidence that David had connections to other parishes within the state and even resided overnight or for days at a time in these locales, he had only one domicile—Rapides Parish. "The terms residence and domicile are not synonymous, and although a person can have several residences, that person can have only one domicile." *Smith v. Goins*, 08-938, p. 5 (La.App. 3 Cir. 7/30/08), 994 So.2d 591, 593, *writ denied*, 08-1756 (La. 8/4/08), 988 So.2d 244.

An action for divorce must be brought in one of only three locations: the parish of either party's domicile or the parish of the last matrimonial domicile. La.Code Civ.P. art. 3941(A). Additionally, venue in a divorce action is jurisdictional and may not be waived by either party. La.Code Civ.P. art. 3941(B);

7

*Treadwell v. Treadwell*, 41,130 (La.App. 2 Cir. 6/28/06), 935 So.2d 740. Thus, a judgment rendered in an improper venue is an absolute nullity. *Id.*

Because venue is jurisdictional in a divorce action, we reject Ethel's argument that in order for Harriett to satisfy her burden of proof, she must search even those places to which David traveled overnight. The only location in Louisiana wherein David could have obtained a divorce was Rapides Parish, his domicile. The only other place he could have obtained a divorce was Harris County, Texas, Harriett's domicile. Harriett successfully established that David did not obtain a divorce in either location.

After reviewing the evidence, we find that Harriett has satisfactorily proven that her 1978 marriage to David had not been dissolved prior to his 1983 marriage to Ethel. Thus, we find that the trial court erred in concluding that Ethel's marriage to David was not null and void.

### Putative Spouse Issue

Our inquiry does not end with our conclusion that the trial court erred in rendering judgment in Ethel's favor. Having found that the marriage between David and Ethel was absolutely null, we must next determine whether Ethel was in good faith in contracting the marriage such that she acquired putative spouse status.

Louisiana Civil Code Article 96 provides:

> An absolutely null marriage nevertheless produces civil effects in favor of a party who contracted it in good faith for as long as that party remains in good faith.

> When the cause of the nullity is one party's prior undissolved marriage, the civil effects continue in favor of the other party, regardless of whether the latter remains in good faith, until the marriage is pronounced null or the latter party contracts a valid marriage.

8

A marriage contracted by a party in good faith produces civil effects in favor of a child of the parties.

A purported marriage between parties of the same sex does not produce any civil effects.

The "good faith" necessitated by La.Civ.Code art. 96 was discussed in *Alfonso v. Alfonso*, 99-261, p. 5 (La.App. 5 Cir. 7/27/99), 739 So.2d 946, 948-49:

> "Good faith" is defined as an honest and reasonable belief that the marriage was valid and that no legal impediment to it existed. *Saacks v. Saacks*, 96-736 (La.App. 5 Cir. 1/28/97), 688 So.2d 673. "Good faith" consists of being ignorant of the cause which prevents the formation of the marriage, or being ignorant of the defects in the celebration which caused the nullity. *Saacks v. Saacks, supra; Rebouche v. Anderson*, 505 So.2d 808 (La.App. 2 Cir.1987), *writ denied*, 507 So.2d 228 (La.1987). The question of whether a party is in good faith is subjective, and depends on all the circumstances present in a given case. *Saacks v. Saacks, supra; In Re Succession of Gordon*, 461 So.2d 357 (La.App. 2 Cir.1984), *writ denied*, 464 So.2d 319 (La.1985). Although the good faith analysis test incorporates the objective elements of reasonableness, the inquiry is essentially a subjective one. *Saacks v. Saacks, supra; Rebouche v. Anderson, supra*.

Whether good faith exists is a factual question, and subject to the manifest error/clearly wrong standard of review. *Id.* In this matter, we find no manifest error in the trial court's factual determination that Ethel was in good faith in entering into, and maintaining, the marriage with David.

The evidence establishes that Ethel is a Rapides Parish native and was thrice married and divorced before her marriage to David. She and David began dating shortly after her return from Alaska in 1978. They began cohabiting in 1979, and were married in Avoyelles Parish on April 8, 1983. Ethel testified that she knew David had been previously married and divorced, but first learned of his second marriage to Harriett following his death in 2005, when she was informed of Harriett's challenge to her receipt of surviving spousal benefits by the military.

9

She claimed to have no knowledge of the specifics or timing of David's first divorce, but was aware that he had three children. She had met the children but had never met or spoken with Harriett.

Ethel explained that she and David were married in Avoyelles Parish because they did not want to draw any attention to the ceremony, given the fact that they had been living together for such a long period. Ethel and David bought, sold, and mortgaged property as husband and wife. Additionally, David enrolled her as his spouse for benefits through his employment with the Rapides Parish School Board, as the beneficiary of his life insurance policy, and as the beneficiary of his Army pension.

David Allen and June René both testified that they told Ethel their parents were still married. David Allen stated that he met Ethel in Alexandria prior to his father retiring from the military, and after he moved to Alexandria, he babysat her children approximately once a month while she and his father went out. Sometime thereafter, he moved to Houston, and he and his sister met Ethel while visiting their father in Rapides Parish in 1981. According to David Allen, Ethel hugged both of them and told them that she was going to be their step-mother. He testified that he became angry and informed Ethel that he already had a mother. According to David Allen, when he made this statement, David became upset and professed to not know what he was talking about. Thereafter, David Allen claimed, he never again spoke to Ethel until after his father's death.

June René's testimony concerning the 1981 incident paralleled her brother's. She also responded to Ethel's comment by stating that she already had a mother and that her father already had a wife.

The trial court found that Ethel was in good faith in entering into and throughout her marriage to David. With regard to the statements of David Allen and June René that they already had a mother, the trial court concluded that these statements failed to contain "any certain or authoritative knowledge of some legal impediment that would have prompted further investigation."

After reviewing the record, we cannot say that the trial court was clearly wrong in finding that Ethel was in good faith when she entered into and throughout her marriage to David. Accordingly, we find no error in its finding that she is entitled to putative spouse status.

As David's putative wife, Ethel is entitled to share in the civil effects of the putative community of acquets and gains which existed between them. La.Civ.Code art. 96. Furthermore, as the marriage between Harriett and David was valid, a legal community of acquets and gains still existed between them. Thus, both communities co-existed between April 8, 1983 and March 31, 2005. In a similar scenario, the court in *In re Succession of Gordon*, 461 So.2d 357 (La.App. 2 Cir. 1984), *writ denied*, 464 So.2d 319 (La.1985), citing the supreme court's opinion in *Prince v. Hopson*, 230 La. 575, 89 So.2d 128 (1956), divided the community property so that the legal and putative spouses each received a one-fourth interest and the decedent's heirs received a one-half interest. We agree that this manner of division would be most equitable. Accordingly, we remand the matter so that the trial court can continue with the division of community property in accordance with our determination.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court. We now render judgment declaring that Harriett Boyer Jones is the sole surviving

11

spouse of David Jones, Jr. and declaring the marriage of David Jones, Jr. and Ethel LeDuff Jones null and void. We further render judgment declaring that Ethel LeDuff Jones was the putative spouse of David Jones, Jr. and is entitled to the civil effects arising from their marriage as that status allows. We remand the matter to the trial court for further proceedings consistent with this opinion. We assess the costs of these proceedings equally between Harriett Boyer Jones and Ethel LeDuff Jones.

**REVERSED, RENDERED, AND REMANDED.**