STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-938


CHARLES F. SMITH, JR.

VERSUS

JONATHAN D. GOINS, ET AL.


************

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 232,209-C
HONORABLE F. RAE SWENT, DISTRICT JUDGE

************

MICHAEL G. SULLIVAN
JUDGE

************

Court composed of Michael G. Sullivan, Elizabeth A. Pickett, and James T. Genovese, Judges.


                                                              AFFIRMED.

Eugene P. Cicardo, Jr.
Attorney at Law
Post Office Box 1128
Alexandria, Louisiana 71309-1128
(318) 445-2097
Counsel for Plaintiff/Appellant:
        Charles F. Smith, Jr.

George C. Gaiennie III
Hughes & LaFleur
Post Office Box 1831
Alexandria, Louisiana 71309-1831
(318) 443-4090
Counsel for Plaintiff/Appellant:
        Charles F. Smith, Jr.

**Thomas D. Davenport, Jr.**
**The Davenport Firm**
**1628 Metro Drive**
**Alexandria, Louisiana  71301**
**(318) 445-9696**
**Counsel for Defendant/Appellee:**
     **Jonathan D. Goins**

**SULLIVAN, Judge.**

Plaintiff-appellant, Charles F. Smith, Jr. (Smith), appeals the trial court judgment, dismissing his petition to disqualify Jonathan D. Goins (Goins) as a candidate for Alexandria City Council, District 3. The trial court held that Smith failed to prove that Goins did not meet the city charter's two-year, in-district, "actual residency" requirement for those seeking the elective office. For the following reasons, we affirm.

**ISSUE**

> Did the trial court manifestly err in determining that the defendant, Goins, "actually resided" in the District 3 residence at issue for the requisite two years immediately preceding the upcoming City Council election?

**FACTUAL BACKGROUND**

The parties to this matter have both filed notices of candidacy to seek the District 3, City Council seat in Alexandria, Louisiana, which is to be voted upon on November 4, 2008. Incumbent, Smith, filed a petition seeking to disqualify Goins, alleging that he is not qualified to become a candidate for the office because he has not "actually resided" in District 3 consecutively for the two years immediately preceding the upcoming general election date as is required by Article II, Section 2-01(E) of the Alexandria City Charter.[1] Specifically, Smith alleged that Goins solely resides outside of the district in a leased apartment, located at 5445 Provine Place,

---

[1]Section 2-01(E) of the Alexandria City Charter states, in relevant part:

> The five (5) council members elected by districts shall have *actually resided* for at least two (2) consecutive years immediately preceding the date of the general election in an area which, at the time set for qualifying for office, is within the district from which elected.

(Emphasis added).

1

rather than at the 3327 Juliet Street address, located within District 3, that Goins listed on his Notice of Candidacy.

During the bench trial of this matter, it was established that the Juliet Street home is owned by Goins' grandmother, Dorothy Chark. Goins was raised at the Juliet Street address and has lived there with his mother and grandmother. Goins' grandmother moved out of the home and into a nursing home in May 2007. His mother, Barbara Howard, testified that she continues to live at the Juliet Street home, but since January of 2008, does overnight house sitting for a friend three to four nights a week. Ms. Howard works full time during the day as well.

This is relevant, according to Smith, because after May of 2007, the Juliet Street home's gas, electric, and water consumption levels decreased dramatically. According to testimony presented on behalf of Smith by Michael Marcotte, the City of Alexandria's Superintendent of Electric Distribution, the Juliet Street home's consumption levels for those metered utilities declined to levels in 2007 and 2008 that suggest the residence is not occupied. Accordingly, Smith contends that no one resides at the Juliet Street home.

Smith also introduced the testimony of two witnesses who live on or near Juliet Street, who testified that they had not witnessed any activity at the residence within the last six months. One witness, Crystal Watts, lives down the street from the Juliet Street home but testified to working full-time hours during the day and not being aware of certain activities, such as a recent Fourth of July party held by Goins at the Juliet Street home or the onsite inspection of the property by the parties which included several individuals that took place in the days before the trial. The other witness, "Spanky" Garmon, was revealed to be a convicted felon, who was not known

as a resident of the community by the defendant and his witnesses. His testimony revealed that he erroneously described the location of the home on Juliet Street and could not identify Goins' vehicle.

It is undisputed that Goins began leasing an apartment at the Provine Place address in May 2007 and continued to do so as of the date of trial. He testified at trial that he resides at both addresses but considers the Juliet Street home to be his actual residence and a place where he intends to remain indefinitely. He testified that after leasing the apartment, his overnight stays at Juliet Street varied widely but approximates it to be between six and nine times a month. However, he testified that he goes to the Juliet Street house often during the day to take naps, visit with neighbors, and eat lunch. He also pays the water, gas, and electric utility bills for the residence. Goins stated that he keeps some food and clothes there but does not wash clothes there because there is no dryer at the house and that he mostly eats take-out food. He also explained that, when he does stay overnight at the home, he rarely showers there and typically showers after his early morning workouts at a gym before heading to work.

Goins' neighbor and childhood friend, Chris Jacobs, who lives across the street from the Juliet Street home, testified that he personally sees and visits at the Juliet Street house with Goins on a weekly basis. He enters the home regularly and testified that there was no question that Goins lives at the house. Goins' mother also testified that her son maintains a presence in the home, that he often eats there, that he sleeps and visits there, and that he maintains clothes and toiletries at the house. She confirmed that he pays the utility bills for the home as well.

3

In further support of Goins' assertions that he actually resides at the Juliet Street house, he presented as evidence his current vehicle registration which lists his address as 3327 Juliet Street. Goins' current drivers' license reflects the Juliet Street address as well. Goins also introduced into evidence his official personal notary identification card issued by the Secretary of State in November, 2006, which bears the Juliet Street address.

Goins also testified to and presented evidence of his receipt of mail at the Juliet Street address throughout 2006 to the present. This included mail from: the Office of the Louisiana Board of Ethics, the Louisiana Supreme Court Committee on Bar Admissions, Southern University Law Center, and multiple professional legal organizations. The evidence also included various consumer finance company bills, checking account statements, Masonic lodge correspondence, and varied civic organization correspondence.

Photographs of the exterior and interior of the Juliet Street home were introduced into evidence by Goins as well. A room shown in one of the photographs is furnished and shows a bed with a bed covering and pillows on it. The photographs also show numerous family photographs on display; Goins' highschool and college awards; college and law school textbooks; laundry and articles of clothing; a refrigerator and freezer with food inside; and a table, displaying an assortment of food items, condiments, dishes, and cookware. The photographs also included an image of a bathroom with visible toiletries and towels.

Testimony from investigators hired on behalf of both parties confirmed much of what the pictures revealed. Both investigators testified that the house appeared to be lived in, was clean, and smelled appropriate for a home that was being occupied.

They both viewed personal items of memorabilia, awards, clothing, shoes, and toiletries, appearing to belong to Goins, as well as perishable food in good condition.

## LAW AND ANALYSIS

Louisiana Revised Statutes 18:451 mandates that a candidate seeking an elective office in this state, unless otherwise provided for by law, meet the qualifications for an established length of residency or domicile as of the date of qualifying for the election, if such is required for the office being sought. In order to qualify as a candidate for Alexandria City Council, District 3, that city's charter requires a two-year, in-district period of "actual residency."

The terms residence and domicile are not synonymous, and although a person can have several residences, that person can have only one domicile. *See* La.Civ.Code art. 38; *Becker v. Dean*, 03-2493 (La. 9/26/03), 854 So.2d 864. Domicile is defined as the principal establishment where one habitually resides, with a corresponding intent to remain. La.Civ.Code art. 38; *Russell v. Goldsby*, 00-2595 (La. 9/22/00), 780 So.2d 1048. "In order to establish a bona fide residence there must be actual, physical use or occupation of the quarters for living purposes." *Blackwell v. Kershenstine*, 97-210, p. 6 (La.App. 3 Cir. 2/27/97), 690 So.2d 247, 250, *writ denied*, 97-545 (La. 3/14/97), 689 So.2d 1390 (citing *Butler v. Cantrell*, 630 So.2d 852 (La.App. 4 Cir. 1993), *writ denied*, 631 So.2d 431 (La.1994)).

The specific inquiry before us in this case is whether Goins "actually resided" within District 3 as is required to qualify as a candidate for that district's city council seat. In an analogous decision addressing this issue, the supreme court defined the term "actual residence" as "a real residence, not a fictitious residence simply designed to circumvent the residency requirements." *Russell*, 780 So.2d at 1052. In that case,

5

the defendant, Dr. Goldsby, owned a home on Division Street in Amite, Louisiana; his medical practice was located in the town as well. *Id.* Dr. Goldsby also owned "a camp" on Goldsby Lane, outside of the town limits, that he purchased in 1972. *Id.* Dr. Goldsby, who had been the mayor of Amite since 1984, sought to qualify for re-election in 2000, but a petition to disqualify him was filed based on the assertion that he was not domiciled and did not "actually reside" in Amite during the year prior to the qualifying election as required by the relevant election law. *Id.*

According to the supreme court, Goldsby's "actual residency" was established within Amite at the Division Street address, even though he maintained the out-of-town residence on Goldsby Lane, where his wife resided full time and where he sleeps overnight often during the week and always on weekends and holidays. *Id.* The court's decision was based on multiple facts established at trial. In reaching its decision the supreme court stated:

> The record establishes that Dr. Goldsby eats, naps, and entertains at the Division Street address. Moreover, Dr. Goldsby sleeps overnight at the Division Street house on occasion. He keeps changes of clothing and toiletry items at the Division Street house, claims a homestead exemption on this property, receives mail at the Division Street address, and uses this address on his driver's license. All these factors show Dr. Goldsby has significant connections to the Division Street address, and that his residency at this address is real rather than fictitious.

> We recognize that Dr. Goldsby does not spend the majority of his nights at the Division Street address. However, there is no evidence that Dr. Goldsby intended to abandon Division Street as his actual residence merely because he spent less time there. Courts must be cognizant of the realities of modern life, in which the demands of a career and other factors often require people to spend a large amount of time at different locations. Nothing in La. R.S. 33:384 prohibits a candidate from having more than one actual residence; rather, the statute focuses on whether the residence within the municipality is in fact an actual

6

> residence--i.e., a real residence, not a fictitious residence simply designed to circumvent the residency requirements. The record in this case demonstrates conclusively that plaintiff has failed to show Dr. Goldsby's Division Street residence is merely a fictitious residence.

*Russell*, 780 So.2d at 1052.

The facts established at trial in this case, as well, reasonably support the trial court's finding that Goins' "actually resided" within District 3 at the Juliet Street home. In summary, Goins was raised at the Juliet Street address and after completing law school in 2006, returned there to reside exclusively until approximately May of 2007 when he began leasing an apartment outside of the district. Nevertheless, Goins continued to maintain the Juliet Street address on his drivers' license and receive his mail at that address. The record reasonably establishes that although Goins did not continue to exclusively sleep overnight, eat, maintain all of his clothing, or entertain at the Juliet Street home, he has maintained "significant connections to the [Juliet Street] address, [signifying] that his residency is real rather than fictitious." *Russell*, 780 So.2d at 1052. We, accordingly, find no manifest error in the trial courts finding "[t]hat he has maintained a commitment to the neighborhood and continues to do so in a manner, and uses the property in a way, that meets the meaning of 'actually resides.'"

### **DECREE**

The judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant, Charles F. Smith, Jr.

**AFFIRMED.**