BEER, Judge.
On April 30, 1976, Henry L. Rotolo, father of five-year-old Catherine Leah Rotolo, filed a petition in the Juvenile Court of the Parish of Jefferson, pursuant to La.R.S. 13:1569(16)(b) and La.R.S. 14:403(C), alleging that Catherine had been abused while in the custody of her mother, Gayle Raymond Rotolo. He supported these contentions with a handwritten note over the signature of Dr. R. J. Sanders, a pediatrician who had examined Catherine on January 5,1976, and concluded: “My impression was child abuse, but received no cooperation from family.”
Apparently determining — without resort to a contradictory proceeding — that there was a sufficiently clear (though ex parte) showing of abuse to warrant immediate action, the Juvenile Court issued a writ of habeas corpus for Catherine and, upon compliance with the writ, granted temporary custody to Mr. Rotolo.
The record shows no further activity up to November 15, 1976, when counsel for Mrs. Rotolo sought an order to fix a hearing date on a rule to show cause why the temporary custody order of April 30, 1976 (discussed above) should not be set aside.
More delay ensued, apparently while the court awaited the filing of a report of investigation by a social worker from the Louisiana Health & Human Resources Administration. Finally, with the report filed as of April 26, 1977, notice went to the parties that the “Rule to Revoke Custody” would be heard on May 12, 1977, in the Juvenile Court.
The record of proceeding of the hearing on May 12th causes us much concern. The fact that this, the first contradictory proceeding in a matter as critical as custody of a child of tender years, took place more than a year after the temporary custody order was signed in an ex parte proceeding is, alone, quite unsatisfactory. But even more disquieting, and the cause of our greatest concern, is that upon a careful reading of the record, we are unconvinced that Catherine’s interests have been fully protected or that sufficient credible evidence was adduced to form a proper and acceptable foundation for adjudication of this sensitive issue — so important to the well being of this child.
The social worker who conducted the investigation finally rendered a report which is of minimal evidentiary value, being based, in large measure, on hearsay. Even so, the report might have formed a satisfactory outline for the subsequent development of admissible evidence in support of a conclusion that Catherine was abused while in her mother’s custody and seem to fare better while in the temporary custody of her father. However, no proof, in the form of credible evidence, was adduced at the hearing to support such a conclusion. We have only the self-serving and totally irreconcilable testimony of the battling parents and their partisans.
It does appear to us that, on the sketchy showing made, we would have been more inclined to conclude that Catherine was abused and that her prospects for further abuse, within the general overall descriptive meaning of the term, were greater while in the custody of her mother than in the custody of her father. Stated another way, we would have been more inclined to the view that Catherine’s best interests would be served by her continuing to be cared for by her paternal grandparents who actually looked after her during the time that her father had temporary custody.
However, the judge who heard and observed the witnesses concluded that the April 30, 1976 order of temporary custody should be revoked and recalled and Catherine returned to her mother.
*470 Though appellants first allegation of error on the part of the Juvenile Court is with respect to insufficient notice of the contradictory hearing, we conclude that his voluntary appearance at the hearing effectively waived any serious objection to service. See: La.R.S. 13:1576(A).
Turning, then, to the merits, we address the issues of what proof is required and who must carry the burden of such proof in a proceeding to adjudicate neglect. In re State ex rel. Thaxton, 220 So.2d 184, 186-187 (La.App. 1st Cir. 1969), gives us helpful guidelines:
“The law in cases such as this is well settled and may be briefly stated thusly: The deprivation of a parent of the custody of his or her child is a harsh proceeding and as here the mother is entitled to their custody unless it is shown by legal and competent evidence that she is morally, mentally, or otherwise unfit or incapable of caring for them, or, that for some other reason, it would be detrimental to the children’s health, safety or welfare to permit them to remain with the mother. In re State in the Interest of Elliott, 206 So.2d 802 (2d La.App., 1968). However, it is also well settled that even the paramount right of a mother to the custody of her children is subject to the authority of the State to deprive her thereof if she is morally, mentally or otherwise unfit or incapable of caring for the children, or if the children’s welfare so requires. State ex rel. Rothrock v. Webber, 245 La. 901, 161 So.2d 759; State ex rel. Brode v. Hatcher, 233 La. 636, 97 So.2d 422; State ex rel. Paul v. Department of Public Welfare, La.App., 170 So.2d 549.
“The burden of proving that a parent is unfit or incapable of caring for a child rests with the State who has in fact and in law interceded in the affairs of the parent for the sake and in the interest of the child. State ex rel. Paul v. Department of Public Welfare, supra.
“In cases involving the custody of children a great deal of discretion is accorded to the trial judge and his decision will not be reversed on appeal except in the clearest case of abuse of such discretion.”
Here we have only a questionable and incomplete description of the actual situation in which Catherine found herself as of May 12, 1977, and absolutely no knowledge of her situation as of this appellate review, over one year after return to her mother’s custody.[1]
Rejection of the abundant hearsay evidence introduced into this record leaves nothing more than the testimony of the parties and their respective friends and/or relatives. In such circumstances, we have little choice but to conclude that no clear cut showing of manifest error has been demonstrated. What appears to be a credibility call favoring the mother’s version brings the case squarely within that area where we are mandated to refrain from substituting our views for those of the trier of facts. Thus, we cannot disturb the result reached by the Juvenile Court, which is, accordingly, affirmed.

AFFIRMED.

. Unfortunately, the Juvenile Court did not order continuing supervision of the mother s custody pending appeal.