Leon Cannizzaro, DISTRICT ATTORNEY
Scott G. Vincent, ASSISTANT DISTRICT ATTORNEY
J. Taylor Gray, ASSISTANT DISTRICT ATTORNEY
PARISH OF ORLEANS, 619 S. White Street, New Orleans, LA 70119, COUNSEL FOR APPELLANT/STATE OF LOUISIANA
(Court composed of Judge Terri F. Love, Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Rosemary Ledet, Judge Regina Bartholomew-Woods)
ON REMAND FROM THE LOUISIANA SUPREME COURT
Judge Rosemary Ledet *262 This child in need of care case is before us on remand from the Louisiana Supreme Court with instructions "to convert relator's appeal to an application for supervisory writs and consider the application on the merits." State in Interest of Z.D. , 17-2118 (La. 9/14/18), 251 So.3d 1086. As instructed, we convert the State's appeal to an application for supervisory writ, grant the writ, and, for the reasons that follow, deny relief.
BACKGROUND
On March 15, 2017, the Department of Children and Family Services ("DCFS") received a report that a two year old, Z.D.,[1] was being abused and neglected by his mother. An employee of DCFS, Tacarra Charles ("Ms. Charles"), investigated the report. As a result of her investigation, DCFS applied for and received temporary custody of Z.D. on April 4, 2017. The case was then set for a continued custody hearing on April 7, 2017. On April 7, 2017, the juvenile court ordered that Z.D. be continued in the custody of DCFS; ordered DCFS "to make diligent efforts to locate any relative that may be available for placement"; and reset the matter for a status hearing on April 13, 2017. On April 13, 2017, the juvenile court ordered the matter be set for a petition status on May 2, 2017.
On May 2, 2017, the State, through the Orleans Parish District Attorney's Office, filed a petition requesting that Z.D. be adjudicated a child in need of care as to both parents. As to Z.D.'s mother, the petition alleged abuse under La. Ch.C. art. 606(A)(1) and neglect under La. Ch.C. art. 606(A)(2). As to Z.D.'s father, the petition alleged neglect under La. Ch.C. art. 606(A)(2) and under La. Ch.C. art. 606(A)(3) that Z.D. was without necessary food, clothing, shelter, medical care, or supervision because of the prolonged absence of his father. The petition further alleged that Z.D.'s father was "incarcerated at Eastham Correction Facility in Lovelady, Texas; that he was thus "not available to provide for [Z.D.'s] medical, emotional, or housing needs"; and that he had "not made a plan for [Z.D.'s] care."[2]
On June 6, 2017, the case proceeded to an adjudication hearing as to Z.D.'s mother; the hearing as to Z.D.'s father was jointly continued. At the conclusion of the hearing, the juvenile court adjudicated Z.D. a child in need of care as to his mother. The case was then set for June 27, 2017, for disposition as to Z.D.'s mother and for adjudication as to Z.D.'s father.
*263 At the June 27, 2017 adjudication hearing, the State called one witness, Ms. Charles, who testified that Z.D.'s father was incarcerated in Texas; that his expected release date was 2027; and that his plan for Z.D.'s care appeared not to be feasible. At the conclusion of the adjudication hearing, the juvenile court found that the evidence offered by the State was insufficient and declined to adjudicate Z.D. a child in need of care as to his father. The State objected. This appeal followed.
We dismissed the State's appeal for lack of appellate jurisdiction. As noted at the outset, this matter is before us on remand from the Louisiana Supreme Court as a writ application.
DISCUSSION
A child in need of care proceeding must be commenced by the filing of a petition. La. Ch.C. art. 631. When the child has been taken into, and continued in, State custody, the petition must be filed within thirty days of the continued custody hearing. La. Ch.C. art. 632(A). The petition must set forth with specificity facts that show the child is a child in need of care, including the acts or omissions of either parent which caused or contributed to the child's condition.[3] La. Ch.C. art. 634(A)(4).
The allegations in the petition must be proven by the State at an adjudication hearing. La. Ch.C. art. 659, et seq. If the child is in DCFS custody, the adjudication hearing must commence within forty-five days of the filing of the petition. La. Ch.C. art. 659(A). With DCFS's consent, the State may submit to the juvenile court for its approval an informal adjustment agreement. La. Ch.C. art. 628(B). If the juvenile court approves the agreement, the time limitations of La. Ch.C. art. 659 are suspended for the duration of the agreement. La. Ch.C. art. 630(B). If the child is in continued custody and no informal adjustment agreement is submitted and approved, the case must proceed to an adjudication hearing within forty-five days of the filing of the petition. La. Ch.C. art. 659(A).
If the case proceeds to an adjudication hearing, the State has the burden of proving the allegations in the petition by a preponderance of the evidence. La. Ch.C. art. 665. To carry that burden, the State must produce admissible evidence. La. Ch.C. art. 663(A) (providing that "the adjudication hearing shall be conducted according to the rules of evidence applicable to civil proceedings"); La. C.E. art. 1101(A)(1) (providing that "[j]uvenile adjudication hearings in non-delinquency proceedings [i.e. , child in need of care proceedings] shall be governed by the provisions of [the Code of Evidence] applicable to civil cases").
The standard of review of a juvenile court's judgment that a child is in need of care is as follows:
The trial judge is vested with great discretion and such a decision will not be reversed on appeal absent a showing of abuse of that discretion. State of Louisiana in the Interest of M.L. , 611 So.2d 658, 660 (La. App. 4 Cir.1992). It is well settled that an appellate court cannot set aside a juvenile court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. State in the Interest of S.M.W. , 2000-3277, p. 14 (La. 2/21/01), 781 So.2d 1223, 1233, citing *264 In re A.J.F. , 2000-0948 (La. 6/30/00), 764 So.2d 47. In its manifest error review, it is important that the appellate court not substitute its opinion when it is the juvenile court judge who is in the unique position to see and hear the witnesses as they testify. Id.
State in Interest of S.T. , 14-0731, pp. 3-4 (La. App. 4 Cir. 1/28/15), 158 So.3d 944, 946 (quoting State in the Interest of D.S. , 04-0327 (La. App. 4 Cir. 7/28/04), 881 So.2d 764 ).
In this case, the record reflects that no informal adjustment agreement was submitted to the juvenile court. As a result, the case proceeded to an adjudication hearing. As the State concedes, "[t]he only evidence presented by the State at the [adjudication] hearing was the testimony of Investigator Charles"-which the juvenile court found consisted entirely of hearsay. Notably, the State does not dispute that Ms. Charles' testimony was hearsay. Instead, the State asserts that the juvenile court "exclude[ed] Investigator Charles's testimony as inadmissible hearsay." The State contends that, because a contemporaneous objection was not lodged as to Ms. Charles' hearsay testimony, the testimony was admissible and the juvenile court was required to consider it. Thus, the State contends, the juvenile court's exclusion of the testimony was contrary to the law, and the juvenile court erred in declining to adjudicate Z.D. a child in need of care as to his father.
The record does not support the State's assertion that the juvenile court excluded Ms. Charles' testimony. The juvenile court never ruled that Ms. Charles' testimony was inadmissible. To the contrary, the juvenile court noted that, although Ms. Charles' testimony was "all hearsay," there had been "[n]o objection to the testimony." Furthermore, the juvenile court's written judgment reflects that the juvenile court "consider[ed] the testimony of the witness taken under oath" before rendering judgment. Thus, contrary to the State's assertion, the juvenile court did not exclude Ms. Charles' hearsay testimony as inadmissible; rather, the juvenile court, after considering her testimony, found it to be insufficient to carry the State's burden.
Turning to the merits, the record before us does not support a finding that the juvenile court committed manifest error. At no point during the hearing did Ms. Charles testify that Z.D.'s father refused or unreasonably failed to supply Z.D. with necessary food, clothing, shelter, care, treatment, or counseling for any injury, illness, or condition. Nor did she testify that Z.D. was without necessary food, clothing, shelter, medical care, or supervision because of his father's incarceration.[4]
Instead, Ms. Charles testified only that Z.D.'s father was in prison, where he would remain through 2027; that, through the warden of the prison where he was incarcerated, she was informed that he wished for his mother-Z.D.'s paternal grandmother-to assume custody of Z.D.; that Z.D.'s grandmother was equivocal regarding her willingness to assume custody *265 of Z.D;[5] and that Ms. Charles thereafter failed to communicate with Z.D.'s father regarding an alternate plan for Z.D.'s care. Thus, even if the juvenile court had entirely credited Ms. Charles' testimony, the testimony was still insufficient to carry the State's burden.
In any event, even when the State presents sufficient evidence to support a finding that a child is in need of care, it does not follow that the juvenile court is required to make such a finding. Instead, in determining whether a child is in need of care, a juvenile court "is vested with great discretion and such a decision will not be reversed on appeal absent a showing of abuse of that discretion. State in Interest of S.T. , 14-0731, p. 3 (La. App. 4 Cir. 1/28/15), 158 So.3d 944, 946. As one court has observed:
In cases involving the custody of children, the trial court is vested with a vast amount of discretion. Bagents v. Bagents , 419 So.2d 460, 462 (La. 1982). The trial court is in a better position to evaluate the best interest of a child because of its superior opportunity to observe the parties and the witnesses who testified at the trial. In re State Ex. Rel. Thaxton , 220 So.2d 184, 187 (La. App. 1 Cir.1969). As an appellate court, we must afford great deference to the trial court's decision, not only because of that court's better capacity to evaluate witnesses, but also because of the proper allocation of trial and appellate functions between the respective courts. Canter v. Koehring Company , 283 So.2d 716, 724 (La. 1973). Thus, the trial court's decision will not be disturbed on review except in the clearest case of abuse of the trial court's great discretion. Bagents , supra .
State ex rel. A.R. , 99-0813, p. 8 (La. App. 1 Cir. 9/24/99), 754 So.2d 1073, 1077-78. Such discretion is essential to permit a court exercising juvenile jurisdiction to fulfill the purposes for which the Louisiana Children's Code, in general, and the articles governing child in need of care proceedings, in particular, were enacted.[6]
*266 Here, we cannot conclude the juvenile court abused its discretion.[7] Our determination is supported by four considerations. First, adjudicating Z.D. a child in need of care as to his father would have worked no material change in Z.D.'s circumstances. Due to his father's incarceration, Z.D.'s mother was the de facto custodial parent. As a result of his mother's abuse, Z.D. was removed from his mother's custody and continued in DCFS custody throughout the proceedings. After Z.D. was adjudicated a child in need of care as to his mother, the juvenile court entered a disposition ordering that DCFS was to "provide for all of the needs of the minor child." The juvenile court specifically noted, however, that the goal of the case plan included reunification. Thus, adjudication of Z.D. as a child in need of care as to his father would not have transferred Z.D. to the State's custody; would not, in the short term, have altered the disposition; and may have proven unnecessary, if Z.D.'s mother demonstrated sufficient compliance to have custody returned to her.
Second, the consequences of finding Z.D. to be a child in need of care as to his father may have been significant-regardless of whether Z.D.'s mother regained custody. Under Louisiana law, a finding that a child is in need of care because a parent is incarcerated is a significant step toward termination of the parental rights of the incarcerated parent.[8] Indeed, when, *267 as in this case, the incarcerated parent is serving a sentence of at least five years of imprisonment, such sentence gives rise to a presumption in favor of termination.[9]
Third, Louisiana courts have repeatedly expressed concern about child in need of custody judgments grounded in hearsay.[10] The narrow time constraints imposed on the State in child in need of care proceedings does not relieve the State of its burden to offer admissible evidence. If the State required additional time to obtain such evidence, the State could have obtained an extension by seeking an informal adjustment agreement. The State, however, chose not to seek such an agreement. Under these circumstances, and given the nature of the interests at stake[11] and the potentially significant consequences of a finding that Z.D. is in need of care as to his father, the juvenile court's decision not to base such a finding on evidence that consisted entirely of uncorroborated hearsay-the accuracy of which cannot be assessed-was reasonable.
Finally, the juvenile court's judgment is without prejudice. The jurisdiction of courts in child in need of care proceedings is continuous;[12] and none of the events terminating such jurisdiction has occurred in this case.[13] Thus, if Z.D.'s mother fails to regain custody, the State may resume proceedings to have Z.D. designated a child in need of care as to his father so that a plan for permanent placement may be pursued and implemented. Then, as previously, the juvenile court will have the discretion to determine whether such a result is in Z.D.'s best interest.
DECREE
For the foregoing reasons, the State's appeal is converted to an application for supervisory writ, the writ is granted, and relief is denied.
APPEAL CONVERTED TO APPLICATION FOR SUPERVISORY WRIT; WRIT GRANTED; RELIEF DENIED
BELSOME, J., CONCURS IN RESULT
DYSART, J., DISSENTS WITH REASONS
BARTHOLOMEW-WOODS, J., DISSENTS WITH REASONS
BELSOME, J., CONCURS IN RESULT
*268 Although I agree that the record does not contain a judgment of disposition, it is clear from the trial court's ruling that it dismissed the State's child in need of care petition, setting the matter for a case review hearing, and not a disposition hearing. Thus, I respectfully dissent as I find that the trial court erred in not finding Z.D. to be a child in need of care as to his father, J.B.
The purpose of Title 6, Child in Need of Care, of the Louisiana Children's Code is to protect children whose physical or mental health and welfare is substantially at risk of harm by abuse, neglect or exploitation. La. Ch.C. art. 601. The health, safety and best interest of the child are of paramount concern. Id.; see also, State in the Interest of D.A., 10-1040, p. 7 (La.App. 5 Cir. 6/14/11), 70 So.3d 960, 963. To reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and find that a reasonable factual basis does not exist, and further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Stobart v. State, through DOTD, 617 So.2d 880 (La. 1993) ; State in the Interest of D.H., 04-2105, pp. 7-8 (La.App. 1 Cir. 2/11/05), 906 So.2d 554, 560.
After reviewing this record in its entirety and considering the best interests of Z.D., I find that it would not be a prudent use of judicial resources to require a disposition hearing prior to ruling on the merits of the child in need of care petition. This is especially true in light of the fact that Z.D.'s father, J.B., is incarcerated until 2027. I would therefore reverse the ruling of the trial court and find Z.D. to be a child in need of care as to his father, J.B.
I respectfully dissent from the result reached by the majority. I would find that the juvenile court abused its discretion, resulting in an adjudication that Z.D. is not a child in need of care. Specifically, the juvenile court held as it did after noting the State relied upon hearsay evidence to which there was no objection. While the majority opinion suggests that the record does not support the State's assertion that the court ruled such hearsay inadmissible, I disagree. The court, on its own, indicated that the testimony of Ms. Charles was "all hearsay" and further noted the lack of objection thereto. The court thereafter stated that individuals like Ms. Charles "may testify about what a parent said" when the parent speaks directly to them, but "not through a second person[,]" as was the case here. The court then concluded there was insufficient evidence. Although the court did not explicitly state that it was excluding such evidence, the court's comments clearly indicate, to me, that the court did not consider the hearsay testimony.
The law is clear that an "adjudication hearing shall be conducted according to the rules of evidence applicable to civil proceedings." La.Ch.C. art.663(A). The failure to object constitutes a waiver of the right to object to admissibility, and thereafter, the evidence may be considered and given probative effect. Guedon & Assocs., Inc. v. Haik , 533 So.2d 1256, 1260 (La.App. 4 Cir. 1988). I am unaware of any jurisprudence under the current circumstances wherein a trial court can supply or sustain *269 an objection that was never offered. Accordingly, I would reverse.

Because this matter involves a juvenile, we identify the juvenile by his initials and other persons by their relationship to the juvenile. See La. Ch.C. art. 412.

The language of the petition does not track the language of the statutory provisions on which it purports to be based. See La. Ch.C. art. 606(A)(2) (setting forth as a ground for finding a child to be in need of care that "[t]he child is a victim of neglect"); La. Ch.C. art. 603(18) (defining neglect as the refusal or unreasonable failure of a parent or caretaker to supply the child with necessary food, clothing, shelter, care, treatment, or counseling for any injury, illness, or condition of the child, as a result of which the child's physical, mental, or emotional health and safety is substantially threatened or impaired"); La. Ch.C. art. 606(A)(3) (setting forth as a ground for finding a child to be in need of care that "[t]he child is without necessary food, clothing, shelter, medical care, or supervision because of the disappearance or prolonged absence of his parent"). Notably, "not [being] available" to provide for a child's needs is not among the grounds for finding a child to be in need of care.

There are eight grounds for finding a child to be in need of care. See generally La. Ch.C. art. 606(A). Among them are abuse, neglect, and the failure to provide a child with necessary food, clothing, shelter, medical care, or supervision due to a parent's prolonged absence. See La. Ch.C. art. 606(A)(1)-(3).

Ms. Charles did testify that, "to the best of [her] knowledge ... [Z.D.'s father] [was] not available to care for the food, clothing, and shelter or medical needs of [Z.D.]." As noted elsewhere in this opinion, however, whether a parent is personally "available" to provide for a child is irrelevant; the only relevant consideration is whether "[a] child is without necessary food, clothing, shelter, medical care, or supervision because of the disappearance or prolonged absence of his parent." While the juvenile court was entitled to infer from the fact of Z.D.'s father's incarceration that Z.D. was without such necessities, the juvenile court was not required to do so. See Rosell v. ESCO , 549 So.2d 840, 844 (La. 1989) observing that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong").

Ms. Charles testified that when she spoke with Z.D.'s grandmother, she indicated that she was willing to take custody of Z.D.; later in the same conversation, however, the grandmother "recanted," citing her concern that Z.D. may not be her biological grandchild. Notably, however, there is no indication in the record that State subpoenaed Z.D.'s grandmother, who was not present, to appear so that she could be questioned under oath.

With respect to child in child in need of care proceedings, the Louisiana Children's Code sets forth those purposes as follows:
The purpose of [the Title governing child in need of care proceedings] is to protect children whose physical or mental health and welfare is substantially at risk of harm by physical abuse, neglect, or exploitation and who may be further threatened by the conduct of others, by providing for the reporting of suspected cases of abuse, exploitation, or neglect of children; by providing for the investigation of such complaints; and by providing, if necessary, for the resolution of child in need of care proceedings in the courts. The proceedings shall be conducted expeditiously to avoid delays in achieving permanency for children. This Title is intended to provide the greatest possible protection as promptly as possible for such children. The health, safety, and best interest of the child shall be the paramount concern in all proceedings under this Title.
La. Ch.C. art. 601. Importantly, however, La. Ch.C. art. 601 cautions that "[t]his Title shall be administered and interpreted to avoid unnecessary interference with family privacy and trauma to the child, and yet, at the same time, authorize the protective and preventive intervention needed for the health, safety, and well-being of children" and specifically notes that "[t]his Title shall be construed in accordance with Article 102," which provides:
The provisions of this Code shall be liberally construed to the end that each child and parent coming within the jurisdiction of the court shall be accorded due process and that each child shall receive, preferably in his own home, the care, guidance, and control that will be conducive to his welfare. In those instances when he is removed from the control of his parents, the court shall secure for him care as nearly as possible equivalent to that which the parents should have given him. These Code provisions shall be construed to promote the stability of the family and to secure simplicity in procedure, fairness in adjudication and administration, and the elimination of unjustifiable delay.
La. Ch.C. art. 102. Thus, as the Children's Code makes clear, while the best interest of the child is a "paramount concern" in child in need of care proceedings; it is not the only concern that courts exercising juvenile jurisdiction should consider.

Indeed, the State does not argue that the juvenile court abused its discretion. Indeed, the State fails to address the applicable standard of review. See La. Unif. R. Ct. App. 2-12.4(A)(9)(b) (requiring that "[t]he brief of the appellant shall contain ... for each assignment of error and issue for review, a concise statement of the applicable standard of review, which may appear in the discussion or under a separate heading placed before the discussion"). Instead, the State contends only that the juvenile court "erred" in declining to adjudicate Z.D. a child in need of care and limits its arguments in support of that contention to its erroneous assertion that the juvenile court improperly excluded Ms. Charles' hearsay testimony.
In the absence of any particularized argument-citing any relevant facts or law-as to whether or how the juvenile court abused its discretion in declining to find Z.D. to be a child in need of care as to his father, the State arguably has abandoned this issue. See La. Unif. R. Ct. App. 2-12.4(A)(9)(a) (requiring that "[t]he brief of the appellant shall contain ... [the] appellant's contentions, with reference to the specific page numbers of the record and citations to the authorities on which the appellant relies"); La. Unif. R. Ct. App. 2-12.4(B)(4) (providing that "[a]ll assignments of error and issues for review must be briefed" and that "[t]he court may consider as abandoned any assignment of error or issue for review which has not been briefed").

See La. Ch.C. art. 1004(D)(5) ("The department may petition for the termination of parental rights of the parent of the child when ... [t]he child is in foster care because the parent is incarcerated and termination is authorized by Article 1015(7) ); La. Ch.C. art. 1015(7) ("The grounds for termination of parental rights [include that] ... [t]he child is in the custody of the department pursuant to a court order or placement by the parent; the parent has been convicted and sentenced to a period of incarceration of such duration that the parent will not be able to care for the child for an extended period of time, considering the child's age and his need for a safe, stable, and permanent home; and despite notice by the department, the parent has refused or failed to provide a reasonable plan for the appropriate care of the child other than foster care.").

La. Ch.C. art. 1036(E) (providing that, "[u]nder Article 1015(7), a sentence of at least five years of imprisonment raises a presumption of the parent's inability to care for the child for an extended period of time, although the incarceration of a parent shall not in and of itself be sufficient to deprive a parent of his parental rights").

See, e.g. , State ex rel. D.H. , 04-2105, p. 16 (La. App. 1 Cir. 2/11/05), 906 So.2d 554, 565 (observing that "the trial court accorded apartment house gossip the status of reliable evidence in contravention of the mother's right of due process"); see also State, in the interest of Rotolo , 361 So.2d 468 (La. App. 4 Cir.1978) (rejecting that portion of the record deemed to be hearsay and grounding its decision to affirm in the credibility determination of the juvenile court as to the remaining record evidence); State, in the interest of Prestridge , 323 So.2d 868 (La. App. 2nd Cir. 1975) (finding that the juvenile court erred by grounding in inadmissible hearsay its finding that a child was in need of care).

As one commentator has observed, "The serious and intrusive nature of child protection proceedings necessarily implicates fundamental constitutional rights, including the child's liberty interest in safety, health and well-being, and the parents' rights to custody and control of their children." Margot E. Hammond, Legal Representation in Child Protection Cases , 66 LA. B.J. 92, 93 (2018).

La. Ch.C. art. 309(A)(1) (providing that "a court exercising juvenile jurisdiction shall have continuing jurisdiction over ... [c]hild in need of care proceedings pursuant to Title VI").

La. Ch.C. art. 313(A) (setting forth the circumstances under which the jurisdiction of a juvenile court is terminated).