# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-803

**STATE OF LOUISIANA**

**IN THE INTEREST OF E.O.**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC-2017-337
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**********

## JONATHAN W. PERRY
## JUDGE

Court composed of Billy Howard Ezell, Van H. Kyzar, and Jonathan W. Perry, Judges.

**AFFIRMED.**

**Daniel Ginnetty**
**Fifteenth Judicial Public Defender's Office**
**Post Office Box 3622**
**Lafayette, Louisiana 70502-3622**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **A.F. (Mother)**

**Keith A. Stutes**
**Lafayette Parish District Attorney**
**Tracey Davenport-McGraw**
**Lafayette Parish Assistant District Attorney**
**Post Office Box 3306**
**Lafayette, Louisiana 70502-3306**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Leah Antoinette Beard**
**Diane E. Cote**
**825 Kaliste Saloom Road**
**Brandywine III, Suite 150**
**Lafayette, Louisiana**
**COUNSEL FOR APPELLEE:**
    **Louisiana Department of Children and Family Services**


**Jeremy Daye c/o CWS I**
**Case Worker**
**100 Asma Boulevard, Suite 260**
**Lafayette, Louisiana  70508**


**Lloyd Dangerfield**
**703 East University Avenue**
**Lafayette, Louisiana  70503**
**COUNSEL FOR DEFENDANT:**
    **Z.O. (Father)**


**Franchesca L. Hamilton-Acker**
**Acadiana Legal Service Corporation**
**Post Office Box 4823**
**Lafayette, Louisiana  70502-4823**
**COUNSEL FOR THE MINOR CHILD:**
    **E.O.**


**Alexander Hurd**
**Fifteenth Judicial Public Defender's Office**
**215 West Saint Peter Street**
**New Iberia, Louisiana  70560**
**COUNSEL FOR THE MINOR CHILD:**
    **E.O.**

**PERRY, Judge.**

A.F.,[1] the biological mother of the minor child, E.O., appeals the judgment of the trial court terminating her parental rights.[2] At the termination trial, the State of Louisiana, through the Department of Children and Family Services ("DCFS"), contended that A.F. had not completed any component of her court-approved case plan. A.F. challenged her case plan and claimed that her efforts were sufficient to maintain her parental relationship. The trial court determined that there was no substantial compliance and there was no reasonable expectation that A.F.'s conduct would significantly improve. Further, the trial court concluded it was in E.O.'s best interest to terminate A.F.'s parental rights. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

E.O., born March 2, 2017, came into the custody of DCFS on April 4, 2017, after an oral instanter order was obtained on the grounds of neglect and dependency. The trial court issued the order based on the affidavit of Renee Forgason, a child protection case worker employed by DCFS.

In her affidavit, Ms. Forgason asserted that on April 2, 2017, DCFS received a report of suspected abuse and neglect of E.O. The basis for E.O.'s removal began on April 1, 2017, when the Youngsville Police Department received a report of domestic violence between A.F. and Z.O. in the home of mutual friends. A.F. admitted to the violence and to possessing marijuana; however, Z.O. left the home with E.O. before police officers arrived.

On April 2, 2017, the Youngsville Police Department responded to the same home after receiving reports that Z.O. had made threats to kill E.O. After police

---

[1] The initials of the parties will be used to protect and maintain the privacy of the minor child involved in this proceeding. Uniform Rules—Courts of Appeal, Rules 5–1 and 5–2.

[2] Z.O., the biological father of E.O., stipulated to the surrender of his parental rights on August 13, 2017.

found Z.O. hiding in the home, he was arrested and charged with domestic abuse battery. Additionally, Ms. Forgason asserted in her affidavit that A.F. and Z.O. exhibited substance abuse and domestic violence issues, lacked stable housing and employment, and that A.F. and Z.O. were using E.O. against one another, placing E.O. at a serious risk of harm.

The trial court confirmed the instanter order after an April 5, 2017 hearing. E.O. was adjudicated a child in need of care on May 24, 2017. A case plan was created for A.F. with an aim toward reunification with a concurrent goal of adoption.[3]

The case plan established for A.F. required she: 1) establish safe and stable housing; 2) pay $5 a month in child support; 3) cooperate and maintain contact with the agency; 4) submit to a psychological/psychiatric evaluation and follow all recommendations; 5) submit to and comply with all recommendations relative to a substance abuse assessment, including participation in substance abuse support groups; 6) submit to random drug screens; 7) attend anger management counseling; 8) obtain and maintain legal employment; and 8) visit with E.O.

After A.F.'s noncompliance, the case plan goal, originally reunification, changed to adoption at the April 10, 2018 case review hearing. On May 24, 2018, DCFS petitioned to terminate A.F.'s parental rights pursuant to La.Child.Code art. 1015(5) and (6) so that E.O. could be certified eligible for adoption.

A termination proceeding was held on August 13, 2018.[4] Thereafter, the trial court rendered judgment concluding DCFS established the parental rights of

---

[3] The trial court held permanency and case review hearings on August 8, 2017, January 23, 2018, and April 10, 2018.

[4] Originally, trial was scheduled for July 16, 2018, but continued on the unopposed motion of DCFS because E.O.'s biological father had not been transported from jail.

A.F. should be terminated pursuant to La.Child.Code art. 1015(5) and (6).[5] Specifically, the trial court found A.F. failed to contribute to E.O.'s care, failed to maintain contact with E.O., and failed to substantially comply with her case plan. The trial court further concluded that the best interest of E.O. would be served by the termination of A.F.'s parental rights to him. The trial court executed a written judgment to this effect on August 14, 2018, and A.F. perfected this appeal.

In her appeal, A.F. alleges that the trial court legally erred by admitting hearsay and by restricting relevant testimony which, consequently, substantially prejudiced A.F.'s constitutional right to a fair proceeding. She asserts the trial court erred in finding that DCFS proved by clear and convincing evidence that she abandoned her child, she failed to substantially comply with the requirements of her case plan, or that there was no reasonable expectation for significant improvement in A.F.'s conduct in the near future, such that her parental rights should be terminated. She further asserts the trial court failed to consider whether it was in the best interest of her child that her parental rights be terminated.

## STANDARD OF REVIEW

This court reviews a trial court's findings on whether or not parental rights should be terminated using the manifest error standard of review. *State ex rel K.G.*, 02-2886, 02-2892 (La. 3/18/03), 841 So.2d 759. Under this standard, we may not set aside any factual findings of the trial court unless the findings are manifestly erroneous or clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

## LAW AND DISCUSSION

The Louisiana Supreme Court has held in an involuntary termination proceeding, two private interests must be balanced—those of the parents and those

---

[5] We note that at the time of trial in this matter, La.Ch.Code art. 1015(5) and (6) had been amended by 2016 La.Acts No. 608, § 1.

3

of the child. *State ex rel. H.A.B.*, 10-1111 (La. 10/19/10), 49 So.3d 345. "On the one hand, parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children." *Id*. at 366.

> On the other hand, however, the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care as "[t]here is little that can be as detrimental to a child's sound development as uncertainty over [where] he is to remain." *Lehman v. Lycoming County Children's Servs. Agency*, 458 U.S. 502, 513, 102 S.Ct. 3231, 3238, 73 L.Ed.2d 928 (1982).

*State ex rel. H.A.B.*, 49 So.3d at 366 (alterations in original).

While a parent's interest warrants deference and protection, our courts regard the interest of the child to be "superior and paramount." *Id.* (citing *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 101 S.Ct. 2153 (1981)). The primary concern of a termination of parental rights proceeding is to secure the best interest of the child. La.Ch.Code art. 1001. "Nonetheless, courts must proceed with care and caution as the permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens." *State ex rel. J.A.*, 99-2905, p. 9 (La. 1/12/00), 752 So.2d 806, 811.

Louisiana Children's Code Article 1015 provides the statutory grounds by which a court may involuntarily terminate the rights and privileges of a parent. In order to terminate rights, the State need establish only one ground set forth in La.Ch.Code art. 1015 by clear and convincing evidence.[6] La.Ch.Code art. 1035(A).

---

[6] The supreme court offered the following definition of "clear and convincing" in *Johno v. Doe*, 16-087, p. 5 (La. 12/6/16), 218 So.3d 1004, 1008 (quoting *Burmaster v. Plaquemines Parish Gov't*, 07-2432 (La. 5/21/08), 982 So.2d 795 (alteration in original)):

> *Black's Law Dictionary* 209 (8th ed.2004) defines "burden of proof" generally as "[a] party's duty to prove a disputed assertion or charge." *Black's* entry for "burden of proof" also includes this definition of "middle burden of proof": "A party's duty to prove a fact by clear and convincing evidence. This standard lies between the preponderance-of-the-evidence standard and the beyond-a-reasonable-doubt standard."

Additionally, the trial court must also find the termination is in the best interest of the child. La.Ch.Code art. 1039.

In this matter, the trial court found that DCFS proved by clear and convincing evidence that termination of A.F.'s parental rights was warranted under La.Ch.Code art. 1015(5) and (6). Louisiana Children's Code Article 1015(5), amended by 2016 La. Acts No. 608, § 1, states:

> Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
>
> > (a) For a period of at least four months as of the time of the hearing, despite a diligent search, the whereabouts of the child's parent continue to be unknown.
> >
> > (b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
> >
> > (c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.

Louisiana Children's Code Article 1015(6) amended by 2016 La. Acts No. 608, § 1, states:

> Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

Furthermore, La.Ch.Code art. 1036(C) and (D) set forth the evidence that may be used to prove a lack of parental compliance with a case plan or the lack of a reasonable expectation of significant improvement in the parent's future conduct or condition:

C. Under Article 1015(6), lack of parental compliance with a case plan may be evidenced by one or more of the following:

(1) The parent's failure to attend court-approved scheduled visitations with the child.

(2) The parent's failure to communicate with the child.

(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.

(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions.

D. Under Article 1015(6), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:

(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.

(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.

(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

*Evidentiary Due Process Violations*

The first assignment of error alleges hearsay was admitted into evidence. A.F. argues the testimony was not only hearsay, but irrelevant and unduly prejudicial.

At issue is testimony elicited from the DCFS case worker, Jeremy Daye, regarding A.F.'s compliance with her case plan. Mr. Daye became A.F.'s case worker in December 2017. After Mr. Daye testified that A.F. had not submitted to any drug screens since his involvement began, DCFS asked whether A.F. submitted to any drug screens with her previous case worker. A.F. objected to Mr. Daye testifying about things of which he had no personal knowledge. Louisiana Code of Evidence Article 602 states: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." The trial court overruled the objection, noting Mr. Daye could not testify what the previous worker said, but he could reflect on notes and records kept by the previous case worker in testifying relative to A.F.'s case plan.

A.F. presents *State in the interest of Z.D.*, 17-0616 (La.App. 4 Cir. 10/10/18), 257 So.3d 260, to support her argument the trial court wrongly permitted hearsay. In *Z.D.*, the trial court declined to adjudicate the child as a child in need of care as to the father.[7] The petition requesting the child be adjudicated a child in need of care alleged the father was incarcerated and was thus not available to provide for the child's medical, emotional, or housing needs, and the father had not made a plan for the child's care. The father, conversely, asserted he wished for his mother, the child's paternal grandmother, to assume custody of the child. The father alleged the DCFS investigator was aware yet had disregarded the paternal grandmother's

---

[7] The child was removed from his mother's custody as a result of abuse and was already adjudicated a child in need of care as to his mother.

unequivocal willingness to assume custody of the child. At the adjudication hearing, the DCFS investigator testified only that the child's father was in prison where he would remain until 2027. The trial court, noting the investigator's testimony was hearsay, found it to be insufficient to carry the State's burden by a preponderance of the evidence. *State in the interest of Z.D.*, 257 So.3d at 267; La.Ch.Code art. 665.

On appeal, our colleagues on the Fourth Circuit found the trial court did not abuse its discretion in declining to adjudicate the child as a child in need of care as to the father, expressing, "Louisiana courts have repeatedly expressed concern about child in need of custody judgments grounded in hearsay. The narrow time constraints imposed on the State in child in need of care proceedings does not relieve the State of its burden to offer admissible evidence." *Id*. at 267 (footnote omitted). We, however, do not find *Z.D.* instructive in the matter before us.

Louisiana Code of Evidence Article 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is inadmissible at trial unless one of the exceptions in the Louisiana Code of Evidence applies. La.Code Evid. art. 802. A trial court's rulings on evidentiary issues will not be disturbed absent a clear abuse of discretion. *In re Succession of Jones*, 08-1088 (La.App. 3 Cir. 3/4/09), 6 So.3d 331.

After reviewing the record, we find no abuse of discretion on the part of the trial court. Mr. Daye testified from his personal knowledge as well as from the DCFS record focusing on the elements of A.F.'s case plan and on whether or not A.F. compiled therewith. He did not testify as to what A.F.'s previous case worker said, nor did he testify about the results of A.F.'s drug screens. Accordingly, this assignment lacks merit.

8

In her second assignment of error, A.F. asserts the trial court's restriction of relevant testimony at various points deprived her of a fair trial. A.F. contends because of these erroneous restrictions, the trial court further erred by failing to consider mitigating evidence which she contends were essential to her defense.

In the first instance, Mr. Daye was asked on cross-examination whether A.F.'s age was taken into account when DCFS formulated her case plan. After answering in the negative, Mr. Daye was asked, "Did [A.F.] receive the same case plan that a 28-year-old would receive if her children were removed for substance abuse?" DCFS objected to relevance, asserting whether a case plan is rightly tailored for a parent should have been addressed at either the Family Team Conferences or the judicial review hearings. Counsel for A.F. responded, "We start on a blank slate . . . this isn't a continuation of the Child in Need of Care case. This is a new hearing, and potentially [A.F.] could have new lawyers. She doesn't in fact, but she could." The trial court sustained the objection, stating its consideration focused on A.F.'s compliance. A.F. argues the questions regarding the tailoring of the case plan were relevant and should have been allowed.

In another instance, A.F. complains Mr. Daye was permitted to testify under direct examination that E.O. was taken into custody because A.F. and Z.O. were engaging in domestic violence. Yet, when A.F. was asked under direct examination whether she was a victim of domestic violence, the trial court sustained the objection of DCFS on the basis this testimony was not relevant to whether or not A.F. complied with her case plan. A.F. argues this testimony was relevant to the issue of whether she was appropriately referred to the right kind of domestic violence counseling.

Lastly, A.F. asserts the trial court also erred in restricting both A.F. and T.G., her mother, from testifying about how A.F.'s grandmother's death had, ironically, positively affected her. The trial court sustained DCFS's objection to relevance.

A.F. asserts this testimony was relevant to her likelihood of near-future compliance and, therefore, relevant to her defense.

A.F. was seventeen when E.O. was born. She attributes her failure to comply with her case plan to her "juvenile" status. A.F. contends it was unfair for the trial court to deprive her permanently of her parental rights "without considering in mitigation whether she may be growing out of the immaturity that hindered her from perfectly complying with her case plan." A.F. relies upon *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012), for this proposition, asserting "the evolving jurisprudence on juvenile criminal sentencing is helpfully analogous to a court's duty when it has a juvenile mother before it on the termination docket: at least to consider mitigating factors before taking an action that permanently terminates a fundamental liberty interest."

In *Miller*, the Supreme Court of the United States held "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Id*. at 465. A.F. contends the *Miller* court's rationale rested in part on "developments in psychology and brain science" which demonstrated "transient rashness, proclivity for risk, and inability to assess consequences[.]" *Id*. at 471-72 (quoting *Graham v. Florida*, 560 U.S. 48, 68, 130 S.Ct. 2011, 2026 (2010)). A.F. asserts her behavior exhibits some of these qualities. One example is her decision not to request transportation to visits because she was afraid her dependency would be held against her. She contends whereas a rational adult knows to ask for help, a child is more likely to opt for an all-or-nothing approach.

DCFS acknowledges A.F. was seventeen when E.O. was born; however, A.F. turned eighteen three months later, and for the majority of the case she was of the age of majority. Therefore, DCFS argues A.F.'s contention her case plan should

have been tailored for a juvenile mother is not relevant and this case is distinguishable from a juvenile criminal case. Further, at each of the review hearings, the trial court approved A.F.'s case plan, finding it consistent with the health and safety of and in the best interest of E.O.

Louisiana Code of Evidence Article 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." A.F.'s retrospective criticisms of the case plan have no bearing on whether or not she complied with requirements of her case plan and, thus, are not relevant to the issue before the trial court. Consequently, we find it was not an abuse of the trial court's discretion to restrict the aforementioned testimonies.

*Abandonment*

A.F. asserts the trial court erred in finding that DCFS proved she abandoned E.O. as that term is defined in La.Ch.Code art. 1015(5). Mr. Daye testified that A.F. failed to contribute $5 per month to E.O.'s care while he was in foster care. A.F. denied knowing this was a requirement of her case plan. Mr. Daye testified A.F. failed to maintain contact with E.O. for six consecutive months. A.F. acknowledged at the August 2018 termination hearing that her last visitation with E.O. was in December 2017. That being the case, we find no manifest error in the trial court's finding that DCFS proved by clear and convincing evidence A.F. abandoned E.O. by failing to provide contributions to E.O.'s care and by failing to maintain contact with her child.

*Failure to Comply with Case Plan*

We also find no manifest error in the trial court's factual finding that DCFS proved by clear and convincing evidence that A.F. failed to substantially comply

11

with the requirements of her case plan, and there is little likelihood that her condition or conduct will improve in the near future. The evidence of record established that from the inception of A.F.'s case plan until the termination trial, she made virtually no progress in fulfilling the case plan requirements.

In order to terminate the parental rights of a parent under La.Ch.Code art. 1015(6), DCFS has to prove by clear and convincing evidence that a year has passed since the child was removed pursuant to court order; (2) there has been no substantial compliance of the case plan by the parent; and (3) there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future.

There is no dispute that a year has passed since E.O. was removed pursuant to court order. A.F.'s case plan required her to obtain stable housing, obtain a legal source of income, make the aforesaid monthly parental contributions, undergo substance abuse treatment or a mental health assessment/psychological evaluation, participate in parenting classes, and maintain contact with E.O.

According to the record, A.F. only made an effort to comply with visitation and the requirement to undergo substance abuse treatment. A.F. entered into inpatient treatment for substance abuse twice in 2017; however, she left treatment both times against medical advice. A.F. missed the vast majority of her scheduled visits with E.O. Mr. Daye testified that before trial in August 2018, A.F.'s last visit with E.O. was on December 13, 2017, and her visits were sparse and sporadic prior to that.

Mr. Daye testified A.F. failed to provide verification of stable housing, a legal source of income, and participation in parenting classes. A.F. claimed to have stable housing and testified that she was cleaning houses for cash. However, A.F. acknowledged not providing Mr. Daye with verification of her claims.

Based upon our review of the record, A.F.'s arguments are not supported. Thus, we find no error in the trial court's finding that DCFS proved by clear and convincing evidence A.F. failed to substantially comply with her case plan and there is no reasonable expectation of significant improvement in her conduct in the near future.

*Best Interests of the Child*

Finally, A.F. alleges DCFS did not offer, nor could the trial court have possibly considered, evidence pertaining to E.O.'s best interest. Thus, A.F. argues the trial court clearly erred by finding it was in E.O.'s best interest A.F.'s parental rights be terminated. We disagree.

As the Louisiana Supreme Court stated in *State ex rel. K.G.*, 841 So.2d at 762, (quoting *State ex rel. J.A.*, 99-2905 (La. 1/12/00), 752 So.2d 806, 810-11), "[t]he fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing." In the instant case, E.O. was just one month old when he was removed from his parents' care. At the time of the termination trial, he had been in foster care for sixteen months.

Despite being given time and opportunity, the evidence is clear that A.F. was unable to show she could consistently provide for the physical, emotional, and mental needs of E.O. Accordingly, we find it was not manifestly erroneous for the trial court to find that DCFS satisfied its burden of proving that it was in the best interest of E.O. that A.F.'s parental rights be terminated.

**DECREE**

For the foregoing reasons, we affirm the judgment of the trial court terminating the parental rights of A.F. to her minor child, E.O.  Costs of this appeal are assessed to A.F.

**AFFIRMED.**